STATE OF MONTANA EX REL. JAMES WESTERCAMP AND
ADOLPH K. TRONRUD, RELATORS AND RESPONDENTS v.
STATE BOARD OF CHIROPRACTIC EXAMINERS OF
THE STATE BOARD OF MONTANA, L. R. GETCHELL,
M. J. KLETTE, AND A. J. LUCKER, AS MEMBERS OF AND
CONSTITUTING SAID STATE BOARD OF CHIROPRACTIC EXAMIN-
ERS OF THE STATE OF MONTANA, RESPONDENTS AND APPEL-
LANTS, AND THE PALMER SCHOOL OF CHIROPRACTIC,
A CORPORATION, INTERVENOR AND RESPONDENT.

Causes No. 10009 and 10010.
Submitted March 3, 1960. Decided June 8, 1960.
352 P. 2d 995.

(451)

452

Marchi, Vance & Leaphart, Helena, for appellants. C. W. Leaphart argued orally.

Ralph J. Anderson and Stanley P. Sorenson, Helena, for respondents. Ralph J. Anderson argued orally.

MR. CHIEF JUSTICE HARRISON delivered the Opinion of the Court.

Relators Westercamp and Tronrud made application to the State Board of Chiropractic Examiners to take the examination required for issuance of a license to practice chiropractic in Montana. Relators are graduates of the Palmer School of Chiropractic, Davenport, Iowa. Westercamp, at the time of his application in September 1956, was a resident of Livingston, Montana, and attended the Palmer School from January 1953 to April 1956, when he was graduated therefrom. Tronrud, a

resident of Big Timber, Montana, attended the Palmer School from September 1952 to September 1955, when he was graduated therefrom. Tronrud made application in October 1955, which was too late for consideration for the October examination, not having been made within 15 days of the examination. He made further application in April 1956. Westercamp's application reveals that he is licensed by examination to practice chiropractic in the State of Kentucky. Tronrud was licensed by examination to practice in the State of Utah. Both relators entered the Palmer School prior to the enactment of section 1, Chapter 178, Laws of 1955, which requires that applicants be graduates of schools approved by the Board, and prior to the Board's adoption of a ''code'' of standards on which this approval was to be based. Their applications to the State Board were denied on the ground that the Palmer School had not been approved by the Board.

Relators then brought these actions, petitioning for writs of mandamus to compel the State Board to allow them to take the examination, to issue licenses to them upon successful completion of the examination and to approve the Palmer School of Chiropractic. The Palmer School intervened, seeking substantially the same results. Alternative writs of mandate were issued, and trial was had on May 20, 1958. Upon stipulation of the parties, the actions were consolidated for trial. The judgment ordered that a peremptory writ of mandate issue compelling the State Board to allow the relators to take the examination for the practice of chiropractic, and upon passage of such examination by the relators, to issue them a license to practice and to approve the Palmer School of Chiropractic insofar as the applications of relators are concerned. The judgment also awarded relators attorney fees of $500 each. This is an appeal from that judgment by the State Board of Chiropractic Examiners.

The substance of appellant's argument is that sections 66-503 and 66-505, R.C.M. 1947, authorize them to establish rules

and regulations which may be necessary to perform their duties; that one of their duties is to approve or disapprove colleges of chiropractic; that unless an applicant for a license to practice chiropractic has been graduated from a college of chiropractic which has been approved by them, he is not eligible to take the examination or be issued a license; that the Palmer School has not been approved by the Board since it has refused the Board the privilege of inspecting the school; that therefore the relators who are graduates of the Palmer School are not eligible to take the examination; that the approval or disapproval of a college of chiropractic involves the exercise of discretion by the Board; and that therefore the writ of mandate is not available to relators to compel the Board to approve the Palmer School.

Relators' argument proceeds on the theory that the writ of mandamus is a proper remedy to compel the Board to exercise its discretion and to approve or disapprove the Palmer School; that the Board's action in refusing to approve the Palmer School was so arbitrary that it amounted to no exercise of discretion at all; that the Board's action was arbitrary because the Board makes no investigation of any college of chiropractic but simply approves those colleges which are approved by the National Chiropractic Association, hereinafter referred to as the N.C.A.; that this amounts to an illegal delegation of power; that if the Board's refusal to approve the Palmer School is based on the standards of approval adopted by the Board, its action is arbitrary because those standards were modeled after standards of the N.C.A. and bear no reasonable relation to the qualifications necessary for the proper practice of the profession; that the Board had no power to enact these rules because they are inconsistent with section 66-503. Relators also argued that the Palmer School did not refuse the Board the privilege of inspection, but only refused admittance to representatives of the N.C.A.

Section 66-503 provides in part that the Board "shall from time to time adopt such rules and regulations as they deem proper and necessary for the performance of their duties, and they shall adopt a schedule of minimum educational requirements, not inconsistent with the provisions of this law, which shall be without prejudice, partiality, or discrimination as to the different schools of chiropractic."

Section 66-505, as amended by section 1, Chapter 178, Laws of 1955, provides in part: "Each applicant shall be a graduate of a college of chiropractic *approved by said board of chiropractic examiners* in which he shall have attended a course of study of four (4) school years of not less than nine (9) months each". Emphasis supplied.

The evidence adduced at the trial reveals the crux of this matter, and a brief summary will serve to simplify the issues relevant here. It appears that the Montana State Board of Chiropractic Examiners adopted a "code" to be used in the accreditation of chiropractic colleges at a meeting held April 21 through 24, 1955. At a subsequent meeting on October 5, 1955, the Board affirmed and ratified that "code". Dr. L. R. Getchell, Secretary-Treasurer of the Board, testified that the code was adopted from similar rules drawn up by the National Council on Education of the N.C.A. He stated that the Board adopted this code because it was the only code which existed at that time that met the standards the Board wanted to establish in the State.

The minutes of the April meeting of the Board reveal, however, the method of implementing approval of chiropractic colleges. Those minutes state:

"The Board realizes it is not at this time in a position to personally visit and inspect all chiropractic colleges so that it may, or may not, approve or disapprove of their standards as judged by the code adopted by the Board. Therefore it is accepting for approval, at this time, those chiropractic colleges accredited by the National Council on Education of the Na-

tional Chiropractic Association, Inc., it being the only accrediting agency within the profession that has a code and facilities for inspection and accrediting chiropractic colleges that is acceptable to the Montana State Board of Chiropractic Examiners, but the Board reserves the right to disapprove any chiropractic college which it may consider of doubtful or sub-standard status.''

At a meeting of the Board held October 4 and 5, 1955, the Board approved eight chiropractic schools. The testimony of Dr. Getchell reveals that no personal inspection of any of these schools was made by the Board, but that approval was based on information received from the N.C.A.

With respect to the Palmer School, the evidence shows that the Board was invited to make an inspection both by letter and in telephone conversations. It also appears that the Board requested that it be accompanied in its inspection by representatives of the N.C.A., but that the Palmer School refused to welcome members of that association. The minutes of the Board reveal that the Board did not therefore make any inspection because it felt that it was not experienced enough to do so without some expert advice, which it felt the N.C.A. would provide.

Testimony of Dr. John J. Nugent, Director of Education for the N.C.A., and Mr. Ralph Evans, Executive Vice President of the Palmer School, reveals a long standing animosity between the Palmer School and certain members of the Association. Mr. Evans stated that Dr. Nugent, along with other N.C.A. officials has ''always been inimical on the public platform and public meetings throughout the entire United States against The Palmer School.'' On the other side, Dr. Nugent stated: ''I think that Dr. Palmer has held back the progress of the chiropractic profession by his own unrelenting opposition to the increase of educational requirements for state licenture and his long-continuing opposition to raising the standards which were advocated in his school'', and further ''We

thought as that [Palmer School] was one of the older schools, it should be leading the profession. His lack of, shall I say, appreciation of modern education is a great handicap to our profession.''

It is worthy of note here also that the ''code'' adopted by the Board, as well as the regulations for accreditation used by the N.C.A. state:

''A school will not be considered unless it is organized as a non-profit corporation and is not otherwise disbursing income or assets to inure to the benefit of any private individual.''

The Palmer School is not organized as a non-profit organization.

The issues to be decided here can be resolved to the following:

1. Has the State Board of Chiropractic Examiners failed to perform a clear legal duty with respect to the approval of the Palmer School of Chiropractic?

2. If the Board has so failed, is the writ of mandate a proper remedy for relators herein?

From the evidence, it is apparent that the Board made no investigation of the merits of the Palmer School, but relied solely upon the recommendation of the N.C.A., whose director of Education, Dr. Nugent, is openly hostile toward that school and whose own code, adopted by the Board, precludes the consideration of such a school because of the profit making nature of its corporate organization.

We need not decide whether this sole reliance by the Board is an invalid delegation of power. See State v. Wakeen, 263 Wis. 401, 57 N.W.2d 364. But it is such a manifest abuse of discretion as to amount to a failure to act at all. We are not prepared to say that consideration cannot properly be given to recommendations of an association of practitioners which fairly represent the profession and which strive to promote the highest standards of professional educational preparation. In this case, however, where no facts were before the Board for approval purposes save the fact of non-approval by the N.C.A., and

where the Board refused to investigate or inspect the Palmer School unless accompanied by representatives of the N.C.A., including Dr. Nugent, who is admittedly hostile toward the school and whose regulations preclude consideration in the first instance because of the corporate structure of the school, the Board has failed to perform its duty as prescribed by law.

Section 93-9102, dealing with the writ of mandamus, provides in part:

"It may be issued by the supreme court or the district court, or any judge of the district court, to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station". It has been established that the writ is available only to compel performance of a clear legal duty, not involving discretion. McCarten v. Sanderson, 111 Mont. 407, 416, 109 P.2d 1108, 132 A.L.R. 1229. But even where discretion is involved, if there has been such an abuse as to amount to no exercise of discretion at all, mandamus will lie to compel proper exercise of the powers granted. State ex rel. Marshall v. District Court, 50 Mont. 289, 294, 146 P. 743.

From what has been heretofore said, it can be seen that no valid action has been taken by the Board with respect to approval of the Palmer School. There is uncontradicted testimony in the record here that prior to the adoption of the Board's code in April 1955, graduates of the Palmer School were accepted for examination by the Board. Dr. A. J. Lucker, one of the members of the Board itself, is a graduate of that school. The Board must be deemed therefore, to have considered the Palmer School as an acceptable chiropractic college when the Board required an applicant to be a graduate of a chartered school "of good repute" prior to 1955. There is no evidence to show that the school's reputation had ever been questioned in Montana prior to 1955. Since no valid action of the Board subsequent to that time amounted to a disapproval, we deem the school remains approved for the purposes of this case. The

record discloses that the Palmer School has been inspected by many other states and is approved by the Veterans Administration for attendance by veterans under the veterans educational program.

Since there is no evidence to indicate that relators' applications do not conform to the requirements of the statutes, or that the qualifications of the relators are questioned by the Board in any other respect, it is the duty of the Board to allow them to take the examination, and in the event of successful completion, to issue relators a license to practice chiropractic in this state.

For the reasons stated, the judgment is affirmed.

MR. JUSTICES CASTLES, ANGSTMAN and THE HONORABLE ERNEST E. FENTON, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE ADAIR dissenting.

I am unable to concur in the holding of the majority decision herein which in my opinion grants the relators relief far in excess of that which is lawfully available under the statutory writ of mandamus.

The district court's judgment and order, so far as pertinent here, reads:

"It is hereby ordered that a Peremptory Writ of Mandate in due form of law be issued requiring defendants and respondents, The State Board of Chiropractic Examiners of the State of Montana, as named in these causes to promptly, and in good faith, allow the plaintiffs and relators, James Westercamp and Adolph K. Tronrud, to take the examination or examinations for the practice of chiropractic in the State of Montana, and upon the plaintiffs and relators, James Westercamp and Adolph K. Tronrud, passing such examination or examinations, to issue to plaintiff and relator, James Westercamp, and plaintiff and relator Adolph K. Tronrud, a due and

regular license to practice the profession of chiropractic within the State of Montana.

"It is further ordered that the defendants and respondents, The State Board of Chiropractic Examiners of the State of Montana, do, and perform such other matters and things as may be necessary to provide for the taking of said examination or examinations for the practice of chiropractic in the State of Montana by the plaintiffs and relators, James Westercamp and Adolph K. Tronrud, and specifically to approve The Palmer School of Chiropractic insofar as the applications of the plaintiffs and relators, James Westercamp and Adolph K. Tronrud are concerned."

The rules which govern the issuance and determination of the statutory writ of mandamus are those stated by this court in State ex rel. Blenkner v. Stillwater County, 102 Mont. 130, 133, 56 P.2d 1085, 1086, viz.:

"*The rule is well-established that before a person is entitled to a writ of mandamus, he must establish a clear legal right in himself and a violation of a duty by the person or officer sought to be coerced.* State ex rel. Peterson v. Peck, 91 Mont. 5, 4 P.2d 1086; State ex rel. Brink v. McCracken, 91 Mont. 157, 6 P.2d 869. *Such a writ will issue only to compel the performance of a clear legal duty.* State ex rel. City of Billings v. Osten, 91 Mont. 76, 5 P.2d 562. *The party applying for the writ must disclose the facts which establish his clear legal right to the relief sought.* State ex rel. Duggan v. District Court, supra [65 Mont. 197, 210 P. 1062]." Emphasis supplied. Also see State ex rel. Grant v. Eaton, 114 Mont. 199, 204, 133 P.2d 588; State ex rel. Goza v. District Court, 125 Mont. 296, 234 P.2d 463; Stewart v. State of Montana, State Board of Equalization, 135 Mont. 323, 340 P.2d 151.

The record before us on this appeal fails to show that the relators herein have established a "clear legal right" to the relief sought. True, the relators made an application to be allowed to take the examination to determine their qualification

for admission to practice chiropractic in the State of Montana but such applications must show compliance with the governing laws of the State of Montana as is set forth in R.C.M. 1947, § 66-505. This mandatory law, in part, provides:

"66-505. (3142) *Applications to practice — fees for license.* Any person wishing to practic chiropractic in this state shall after March 5, 1951, make application to said board of chiropractic examiners through the secretary-treasurer thereof, and upon such form and in such manner as may be prescribed and directed by the board, at least fifteen (15) days prior to any meeting of said board. *Each applicant shall be a graduate of a college of chiropractic approved by said board of chiropractic examiners* in which he shall have attended a course of study·of four (4) school years of not less than nine (9) months each * * *. Application shall be made in writing and shall be sworn to by some officer authorized to administer oaths, and shall recite the history of applicant's educational qualifications, and how long he has studied chiropractic, of what school or college he is a graduate, and the length of time he has been engaged in practice, accompanying the same with proofs thereof, in the shape of diplomas, certificates, etc., and shall accompany said application with satisfactory evidence of good character and reputation." Emphasis supplied.

The relators' applications for leave to take the Board's examination set forth the information concerning their qualifications as required by section 66-505, supra. However, such applications were disallowed by the Board of Chiropractic Examiners for the reason, as relators were informed, that *relators were not graduates of a school of chiropractic approved by the board.*

What, then, were the *clear legal rights* of which relators were being denied by the Board?

Did relators have a clear legal right to take the examination despite the fact that the school of chiropractic from which they had graduated was not one of which the Board had approved?

To so hold would violate an express statute of this state yet that is precisely what the writ here issued commands.

The duty of approving or rejecting schools of chiropractic, under sections 66-503 and 66-505, is vested in the Board of Chiropractic Examiners and not in the courts.

The power to approve or reject is one involving the exercise of discretion. Its exercise or non-exercise may not be controlled by the writ of mandate. As said in State ex rel. Morgan v. White, 136 Mont. 470, 348 P.2d 991, 997 : ''Mandamus will compel action but not control discretion. State v. Rathbone, 110 Mont. 225, 100 P.2d 86; State ex rel. Stuewe v. Hindson, 44 Mont. 429, 120 P. 485; State ex rel. Scollard v. Board of Examiners for Nurses, 52 Mont. 91, 156 P. 124.''

The Board of Chiropractic Examiners' powers to approve or reject chiropractic schools whose graduates may take the examination are set out in section 66-503, R.C.M. 1947, which provides that ''they [the Board] shall adopt a schedule of minimum educational requirements, not inconsistent with the provisions of this law, which shall be without prejudice, partiality, or discrimination as to the different schools of chiropractic.''

It is not clear from the record now before this court whether the Board of Chiropractic Examiners has either approved or disapproved the Palmer School of Chiropractic from which the relators graduated. Such Board has adopted certain rules and regulations which it asserts it will follow in its determination of whether a school of chiropractic is to be approved or rejected. These rules and regulations were formulated by an association known as the National Chiropractic Association, and all have been approved and adopted by the Montana Board of Chiropractic Examiners. However, the Palmer School, from which the relators graduated, has not been approved by the National Chiropractic Association, and it will not be approved for the reason that the business organization of the Palmer School, as distinguished from its academic organization under the aforesaid rules and regulations, *does not* and *will not conform* to an

arbitrary rule of the National Chiropractic Association which excludes all schools from approval unless organized as non-profit corporations. It follows that if the Montana Board of Chiropractic Examiners, which asserts it has adopted the National Chiropractic Association's rules and regulations, intends to comply with such rules and regulations the Montana Board would still be wholly unable to approve the Palmer School, whether or not the Board members personally visit and inspect such school, because of the simple fact that such school is not a non-profit corporation or institution. Nevertheless, it is very difficult to determine whether the Montana Board of Chiropractic Examiners intends to follow its own rules and regulations since such Board persists in asserting that it has not as yet taken any action officially in either approving or rejecting the Palmer School.

The Legislature has granted to the Board the power to either approve or to reject chiropractic schools. In the exercise of its power the Board may not unreasonably delay its action of either approving or rejecting, and the graduates of the various chiropractic schools have a right to be informed as to the status of their particular school insofar as such status concerns the Board of Chiropractic Examiners and insofar as it affects the rights of such graduates to take the Board's examination.

When the Board fails or refuses to take any action, either approving or rejecting their school, then the graduates, adversely affected thereby, would be entitled to apply to the court to compel such action on the part of the State Board of Chiropractic Examiners.

The court may compel the Board to perform its clear legal duties and in that behalf to exercise its powers and its discretion, but the court is without authority to order or adjudge that the Board here and now approve the Palmer School or any other particular school.

Likewise the court is lacking the necessary authority to order or adjudge that the Board reject the Palmer School. The

discretion to approve or to reject rests with the Board and not with the court.

In the event the Board, by adopting the National Chiropractic Association rules and regulations, thereby in effect rejected the Palmer School then should relators deem themselves aggrieved thereby and be able to show the action of the Board to be arbitrary and violative of the provisions of R.C.M. 1947, § 66-503, relators' remedy would then be to have the Board's proceedings and determination certified to the court for review on certiorari but not on application for mandamus.

In my opinion, the rules and regulations of the National Chiropractic Board are patently discriminatory and their adoption by the Montana Board is obviously in excess of the power lawfully granted such Board. However, these facts do not empower the court to order or adjudge that the Montana Board approve relators' particular school. To so order and adjudge would deny to the Board its right to exercise its sound discretion in the matter. Such order and adjudication is beyond the power of the writ of mandamus.

Since the relators herein have not and cannot show a clear legal right to the relief which they here seek in their petition for a writ of mandamus to be directed against the State Board of Chiropractic Examiners of this state, the order and judgment of the district court should be reversed and the instant proceeding ordered dismissed. See Eastman v. Southworth et al., and Board of Medical Examiners of Arizona, Ariz., 351 P.2d 992, decided May 4, 1960.