SKAGGS DRUG CENTERS, a Corporation, Petitioner and Respondent, v. MONTANA LIQUOR CONTROL BOARD and J. E. RAFN, ASHTON JONES, JOHN J. McLAUGH- LIN, ROBERT ARNOT and WALTER G. MORRIS, as members of and constituting said Montana Liquor Control Board, and C. M. SHELTON, as Administrator thereof, Respondents and Appellants.

No. 10813

Submitted September 10, 1964. Decided February 1, 1965.
Rehearing granted and Opinion withdrawn April 1, 1965.
Resubmitted June 10, 1965. Decided July 26, 1965.

404 P.2d 511.

H. J. Luxan (argued), Helena, for appellants.

Johnson, Johnson & Alexander, Howard A. Johnson (argued), Butte, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This appeal was originally decided on February 1, 1965, in an Opinion which appears hereinafter. The Opinion was withdrawn by our court by our Order of April 1, 1965, due to legislation having been passed and signed into law as Chapter 271, Session Laws of 1965. Also, this Court was informed that the Liquor Control Board had issued the licenses which were the subject of the action and felt that the matter might be moot. We allowed renewed petitions for rehearing, and, both parties have made such petitions. Now, having considered the matters contained in the original appeal anew, and the matters contained in the petitions for rehearing, we reissue the following Opinion:

Respondent, a Utah Corporation, operating a chain of stores known as "Skaggs Drug Centers," made application to the appellant, Montana Liquor Control Board, for the issuance of off-premise retail beer licenses for use at its Butte store and one of its Great Falls stores. The board made the determination that the stores proposed for licensing were not grocery

stores and for that reason denied the applications and refused the licenses.

Thereafter, respondent instituted proceedings in Mandamus in the district court of the first judicial district to compel the issuance of the licenses. Upon the filing of the respondent's petition an alternative writ issued directing that the Board grant the licenses or show cause why it had not done so. The Board filed its return and answer; the trial court heard arguments, reserving its rulings on the questions of law raised by the pleadings, and set the cause for trial. After trial on the merits, the court entered its findings of fact and conclusions of law, opinion and judgment, determining all issues in favor of the respondent Skaggs, granting a peremptory writ of mandate and awarding the respondent its costs and attorneys' fees. It is from that judgment that the Board prosecutes this appeal.

The Board's eight assignments of error, in substance, bring to this court the following issues: whether the Montana Liquor Control Board was empowered by the terms of the Montana Beer Act (R.C.M.1947, §§ 4-301 to 4-358) to establish the policy that grocery stores are the only "fit and proper person, firm or corporation to sell beer" (section 4-333), and, whether Board action taken pursuant to this policy is subject to judicial review.

The first issue must, we think, be answered in the negative. Section 4-327 of the Act provides, in part, that:

"*Any person* desiring to possess and have for sale beer, under the provisions of this act, for the purpose of selling it at retail, shall first apply to the board for a permit so to do and tender with such application the license fee herein provided for. Upon being satisfied from such application or otherwise that the applicant *is qualified as herein provided, the board shall issue a license to such person* * * *.*" Emphasis supplied. The qualifications to which this section has reference are set out in section 4-333 which provides, inter alia, that: "Except as otherwise provided by law, a license to sell beer at retail in accordance with

the provisions of this act and the regulations of the Montana liquor control board, may be issued to any person, firm or corporation who shall be approved by a majority of the Board as a fit and proper person, firm or corporation to sell beer. * * *

"(2) A retail license to sell beer in the original packages for off-premise consumption only may be issued to any person, firm or corporation who shall be approved by a majority of the board as a fit and proper person, firm or corporation to sell beer."

On the basis of these statutory provisions the appellant Board has made the determination that, *as a matter of policy, only grocers or bona fide grocery stores are qualified to retail beer for off-premise consumption.* In essence, by the Board's interpretation the Montana Beer Act has thus been amended to read that a license "may be issued to any person, firm or corporation who shall be approved by a majority of the board as a fit and proper grocer or grocery store to sell beer." Despite the appellant Board's argument to the contrary, we remain singularly convinced that such a construction defies both the intent of the Legislature and common sense. We agree that an administrative board or agency created by the Legislature must, as a matter of necessity, render interpretations and constructions of the statutes which it is charged with the responsibility of administering and from which it draws its own authority to act. This principle, however, falls far short of sustaining the proposition that an agency, once established may, on its own motion, enlarge, modify, restrict or otherwise change the law to expand the scope of its own powers or to achieve results which patently were neither contemplated nor intended by the Legislature.

Counsel for the appellant Board, in brief and oral argument, vigorously asserts that the adoption of its "grocery store" policy was a matter wholly within its discretion and, because it is a discretionary function, is not reviewable judicially. We do not agree. The question, as we view it, is

principally one of statutory construction and thus, we think, is a question essentially judicial, rather than administrative, in nature. Were the question considered herein one of fact arising from conflicting evidence, which necessarily presupposes the exercise by the Board of its discretion which is conferred upon it by statute, then we should avoid a substitution of judgment which would be detrimental to the proper allocation of functions as between agency and reviewing court. Even this principle, as we shall see later in another connection, has suffered legislative modification and, hence, the discretion vested in the Board is not as absolute as is contended by counsel. With these considerations in mind, we need not become entangled in the discretionary-ministerial dichotomy which has plagued this court, and those of our sister states, when called upon to review the actions of administrative boards and agencies.

■ What is the meaning of the term "fit and proper person to sell beer?" Such meaning must necessarily reflect the intendment of the Legislature and make effective the policies underlying the act itself. The fact, that alcoholic beverages are regarded as a social problem, the manufacture and sale of which are legitimate subjects of police regulations in order to protect the public health, welfare and morals, is too clearly established to require protracted discussion here. With these social interests as a background the criteria for determining who is a "fit and proper person to sell beer" is, we think, ascertainable by reading the relevant sections of the Act itself. The Act provides that the Board may make, adopt and promulgate rules and regulations relating to labeling of containers and the contents thereof, standards of sanitation, cleanliness, safety of all premises, including plumbing, fixtures, equipment, etc. (section 4-307) ; that an applicant for license to manufacture and sell beer must submit evidence that he is "of good moral character and a law abiding person" (section 4-310) ; that no licensee shall employ or permit any person to serve to patrons

"unless possessed of good moral character" (section 4-339); and, that it shall be unlawful for any person licensed under this act, or his employees, to sell beer to: persons under 21 years of age; any intoxicated person, etc.; an habitual drunkard; or an interdicted person (section 4-330). Bearing in mind the public interests previously mentioned, the qualifications, restrictions and prohibitions just cited provide the criteria for determining whether an applicant is, or is not, a "fit and proper person to sell beer" within the purview of the Act. More specifically, we observe that nowhere in the Act, by implication or otherwise, are there any restrictions upon the nature of the legitimate retail business which may be operated in conjunction with the sale of beer for off-premise consumption. We thus conclude that the Board's policy determination that grocery stores are the only fit and proper persons to sell beer is without foundation in law or fact and that the respondent, Skaggs Drug Centers, Inc., is entitled to retail licenses, provided their stores and personnel employed therein meet the criteria and standards set forth in the Act.

With regard to the issue of whether the action taken by the Board in this instance was subject to judicial review, counsel for the Board unequivocally asserts that "there can be no question that the applicable law rests in the liquor board virtually an absolute discretion in the matter of issuance or denial of applications for off-premise beer licenses, and at the same time makes no provision for judicial review of the Board's discretionary determinations in this area."

In view of this position taken by the Board, and the fact that the respondent Skaggs sought relief in the court below by mandamus proceedings, this court ordered, and received from both counsel, supplemental briefs concerning the applicability of section 4-342 of the Montana Beer Act, which provides that:

"The board may (1) upon its own motion and shall (2) upon a written, verified complaint of any person, investigate the action and operation of any brewer, wholesaler or retailer

licensed under the Montana beer act. If the board, after investigation, shall have reasonable cause to believe that any such licensee has violated any of the provisions of this act, or any rules, or regulations of the board, it may, in its discretion, and in addition to the other penalties herein prescribed, proceed to revoke the license of any such licensee, or it may suspend the same for a period of not to exceed three (3) months, or it may refuse to grant a renewal of said license upon the expiration thereof, under the procedures herein provided. If the board shall, in its sound discretion, determine to invoke such procedures *for the purpose of refusing to grant a license or refusing to grant a renewal thereof to any applicant,* or for revoking or suspending any license previously granted, it shall give *applicant or licensee, as the case may be,* fifteen (15) days' notice in writing of its intended action, addressed and forwarded by registered mail to the *applicant or licensee* at the address given in the *application for license, or upon the existing license, as the case may be,* stating generally the basis and reasons for its intended action and the proposed action. Within said fifteen (15) day period said *applicant or licensee* may, *in cases of intention to refuse to grant a license, or intention to refuse to grant a renewal thereof,* institute proceedings in the nature of a writ of review, or, in case of intention to revoke or suspend a license, institute proceedings in injunction, and in any event in the district court of the county wherein the premises of *applicant or licensee* are located for the purpose of having the intended action of the board judicially reviewed and inquired into for *(a) abuse of discretion on the part of the board, (b) failure of the board to observe, or its departure from, or disregard of the applicable law governing the board in the particular circumstances, or (c) for arbitrary or tyrannical action by the board.* The board shall in all cases certify to the court its complete record in the matter and the issues shall be heard on the merits by the court upon such record and upon such further legal evidence as the parties may present. If the court in any such proceedings determines

that such licensee has, in fact, violated any provisions of this act or any regulations of the board, the court shall dismiss such proceedings, and the board shall proceed to such administrative determination as to it seems proper in the circumstances. Pending determination of such matter on the merits the court may, based upon a showing of undue hardship to a licensee and upon the posting of a proper bond in an amount, and conditioned upon such terms as the court may prescribe in the presence of the surrounding circumstances, stay the effective date of the intended action of the board for such time as to the court may seem proper. If no stay order is issued by the court or any stay order once issued has expired, the board shall issue *its order of suspension or of revocation of license or its order denying the license applied for, or renewal thereof.* If the court shall, on the other hand, determine that good cause did not exist for the intended action of the board, or that the board abused its discretion, or otherwise acted unlawfully with respect to its intended action, on any of the grounds herein stated, the court shall issue its order and decree accordingly and the board shall comply therewith. Either party to the proceedings in the district court may appeal from its decision to the supreme court of the state of Montana, by following the procedures applicable to such appeals in civil actions." (Emphasis supplied.)

■ In its supplemental brief, counsel for the Board contends that this section has reference only to those cases before the Board involving renewal, suspension or revocation of existing licenses and does not apply to cases involving, as here, original applications by persons not previously licensed. This conclusion, it is argued, is supported by the fact that the first two sentences of the section refer only to licensees, not applicants; that these two sentences are grants of "substantive" power to the board; that the remainder of the section is "procedural," and, therefore, cannot restrict or modify the substantive character of the preceding part of the section. We do not agree. As-

suming, without deciding, that the initial portion of the section does provide a measure of substantive power to the Board we think that the principal reason for the enactment of this section by the Legislature was to afford to any person, original applicant or otherwise, appearing before the Board the right to have that agency's actions reviewed judicially for the reason's expressly stated, viz., abuse of discretion, actions not in conformity to the law, and arbitrary and tyrannical action. The language of the section supports our conclusion. The section expressly and repeatedly makes reference to "applicant *or* licensee" and the Board's "intention to refuse to grant a license, *or* intention to refuse to grant a renewal thereof." The Board discounts the legislative use of this disjunctive phraseology by arguing that the terms are synonymous. This construction not only places undue stress upon the rules of statutory construction but also lends to the statute a degree of superfluity and redundancy which we can neither recognize nor endorse. Had the Legislature intended that the section not apply to "applicants" or to actions of the Board refusing to grant a license then these would have been omitted. Accordingly, we hold that the respondent, upon denial of its license application by the Board, had the right under this section to proceed in the district court for the purpose of having the action of the Board reviewed in accordance with the provisions stated therein.

The sole remaining question is whether the proceedings instituted by the respondent in the court below were in proper form. Counsel for the Board insists that the Board's action was discretionary in nature and is, therefore, beyond the reach of mandamus. Without becoming involved in the complexities and intricacies of extraordinary remedies and the procedural perils attendant thereto we need only cite State ex rel. Westercamp v. State Board of Chiropractic Examiners (1960), 137 Mont. 451, 458, 352 P.2d 995, 999, wherein we stated that "It has been established that the writ is available only to compel performance of a clear legal duty not involving dis-

cretion. McCarten v. Sanderson, 111 Mont. 407, 416, 109 P.2d 1108, 132 A.L.R. 1229. But even where discretion is involved, if there has been such an abuse as to amount to no exercise of discretion at all, mandamus will lie to compel the proper exercise of the powers granted. State ex rel. Marshall v. District Court, 50 Mont. 289, 294, 146 P. 743."

Moreover, in view of the specific provisions of section 4-342 which expressly make available the right of judicial review, we think that to deny the respondent the relief prayed for on the grounds argued by the appellant Board would be, at best, to resort to common law practices and pleadings, and, at worst, to exalt form over substance. Accordingly, we regard the respondent's petition for writ of mandamus as a proceeding "in the nature of a writ of review" pursuant to the statute and the lower court did, therefore, have jurisdiction and quite properly entertained hearings thereon. However, we do not say, nor should we be understood as saying, that all proceedings in the district courts on appeal from administrative or board actions may be instituted without regard to the procedural devices expressly set forth in the relevant statute. By considering the merit and substance of the instant claim not withstanding the form, we do not, impliedly or otherwise, endorse procedures which do not comply substantially with those made available by statute. Inasmuch as the present proceeding is considered by us to be one afforded by statute rather than one of mandamus, that portion of the judgment of the lower court awarding costs and attorneys' fees to the respondent must be reversed.

Accordingly, the judgment of the lower court, so modified, is affirmed. So ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON, ADAIR and CASTLES concur.