No. 12843

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

_____

GENERAL AGRICULTURE CORPORATION,

Plaintiff and Appellant,

-vs-

PAUL J. MOORE and LUELLA MAY MOORE,
husband and wife, et al.,

Defendants and Respondents.

_____

Appeal from: District Court of the Twelfth Judicial District,
Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellant:

Jardine, Stephenson, Blewett and Weaver, Great Falls,
Montana, K. Dale Schwanke argued, Great Falls, Montana
W. G. Gilbert, Jr., Dillon, Montana

For Respondents:

Swanberg, Koby, Swanberg and Matteucci, Great Falls,
Montana, Ray F. Koby argued, Great Falls, Montana
Morrison, Ettien and Barron, Havre, Montana
J. Chan Ettien argued, Havre, Montana
Hauge, Hauge, Ober and Spangelo, Havre, Montana
Ronald Smith, Havre, Montana
Weber, Bosch, Kuhr, Dugdale and Warner, Havre, Montana
Burns, Solem and MacKenzie, Chinook, Montana

For Amicus Curiae:

Allen B. Chronister, Helena, Montana
Kendrick Smith argued, Butte, Montana
James T. Harrison, Jr. argued, Helena, Montana

_____

Submitted:  February 10, 1975

Decided: APR 3 0 1975

Filed: APR 3 0 1975

_Thomas J. Kearney_
Clerk

Hon. Arthur Martin, District Judge, sitting for Chief Justice James T. Harrison, delivered the Opinion of the Court:

The circumstances leading to this appeal are brief. On November 30, 1972, plaintiff filed its petition seeking to appropriate surplus waters from an adjudicated stream under provisions of section 89-829, R.C.M. 1947. While the action was pending the legislature enacted Chapter 452, Laws of 1973, denominated as the "Montana Water Use Act." The new Act, codified as sections 89-865 et seq., R.C.M. 1947, substituted a new procedure for the appropriation of water rights, effective July 1, 1973. The former Act, including the section under which plaintiff instituted its action, was repealed.

After the effective date of the new Act, plaintiff, without changing character of relief sought, filed an amended complaint. On motion of defendants (a group of appropriators or claimants who have or appear to have, rights in the source of supply of water rights sought by plaintiff, Cow Creek), the district court dismissed the amended complaint on the ground plaintiff's action was abated by the repeal of section 89-829. The propriety of the dismissal on that ground is the primary issue on this appeal.

Authority for the district court's dismissal is derived from section 43-512, R.C.M. 1947, which provides:

"Any statute may be repealed at any time, except when it is otherwise provided therein. Persons acting under any statute are deemed to have acted in contemplation of this power of repeal."

Section 43-512 is an extension of common law stated in 73 Am Jur 2d, Statutes, § 389:

"* * * if a statute is unconditionally repealed without a saving clause in favor of pending suits, all pending proceedings thereunder are terminated. * * * Moreover, in the absence of any constitutional saving clause, a judgment rendered by virtue of the terms of a statute which is repealed is void, although the proceedings may have been commenced before the repeal."

See also: Anno. 77 A.L.R. 1338, 1345

This rule applies especially to remedial statutes such as section 89-829, R.C.M. 1947. 73 Am Jur 2d, Statutes, § 11; Lemon v. Los Angeles Terminal Ry. Co., 38 C.A.2d 659, 102 P.2d 387, 393; Continental Oil Co. v. Mont. C. Co., 63 Mont. 223, 230, 207 P. 116.

Initially on appeal, arguments presented in behalf of appellant were directed toward showing that the Water Use Act contained provisions which saved the proceeding from the annihilating effect of section 43-512, R.C.M. 1947. Subsequently, supplemental briefs were submitted which placed emphasis on constitutional considerations rather than legislative intent. We agree that constitutional provisions are controlling in disposition of this appeal.

Article III, Sec. 15, of the 1889 Montana Constitution, provided:

> "The use of all water now appropriated, or that may hereafter be appropriated for sale, rental, distribution, or other beneficial use, and the right of way over the lands of others, for all ditches, drains, flumes, canals, and aqueducts, necessarily used in connection therewith, as well as the sites for reservoirs necessary for collecting and storing the same, shall be held to be a public use.* * *"

In 1972, Montana adopted a new constitution which became effective on July 1, 1973. Subdivisions (2) and (3) of Section 3, Article IX of the 1972 Constitution are substantially the same as Article III, Sec. 15, of the 1889 Constitution, but two provisions of significance to this case, subdivisions (1) and (4), were added in Section 3, Article IX of the 1972 Constitution.

Subdivision (1) provides:

> "All existing rights to the use of any waters for any useful or beneficial purpose are hereby recognized and confirmed." (Emphasis supplied).

Subdivision (4) provides:

> "The legislature shall provide for the administration, control and regulation of water rights and shall establish a system of centralized records, in addition to the present system of local records."

Section 6 of the Transition Schedule of the 1972 Constitution contains this provision:

"General transition

"(1) * * *

"(2) The validity of all public and private bonds, debts, and contracts, and of all suits, actions and rights of action, shall continue as if no change had taken place."

This paragraph will hereafter be referred to herein as the "transition clause".

16 C.J.S. Constitutional Law §48, states:

"* * * it is within the power of those who adopt a constitution to make some of its provisions self-executing. * * *

"A provision is self-executing when it can be given effect without the aid of legislation and there is nothing to indicate that legislation is contemplated in order to render it operative * * *.

"The fact that a right granted by a constitutional provision may be better or further protected by supplementary legislation does not of itself prevent the provision in question from being self-executing; nor does the self-executing character of a constitutional provision necessarily preclude legislation for the better protection of the right secured, or legislation in furtherance of the purposes, or of the enforcement, of the provision."

See also: State ex rel. Stafford v. Fox-Great Falls Theatre Corp., 114 Mont. 52, 132 P.2d 689.

This Court in State v. Aitchison, 96 Mont. 335, 341, 30 P.2d 805, in discussing the constitutional provision relative to public use of water, said:

"The effect of this constitutional provision in declaring certain uses to be public, and the declaration of this court that the provision is self-executing, have the effect of foreclosing all inquiry into the question whether or not the enumerated uses are public, both by the legislature and the judiciary."

We construe Article IX, Section 3 (1) of the 1972 Constitution as not only reaffirming the public policy of the 1889 Constitution but also as recognizing and confirming all rights acquired under that Constitution and the implementing statutes enacted thereunder. Construed in this context, Article IX, Section 3, with the exception of subdivision (4), is self-executing.

As urged by respondents, legislation may be enacted in contemplation of constitutional provisions to become effective at a later

- 4 -

date.  State ex rel. Woodahl v. Straub, 164 Mont. 141, 520 P.2d 776, 31 St.Rep. 138.  Proceeding from this premise respondents argue the repeal of section 89-829, R.C.M. 1947, took effect before the effective date of the 1972 Constitution with the result that appellant had no existing right that could be recognized and confirmed.  The routing of the repealing provision of the Act through section 43-512, R.C.M. 1947, has the effect of giving these statutory provisions priority over the 1972 Constitution.  The statutory repealing provision and section 43-512, operating together, say that appellant has lost its right to proceed under section 89-829, R.C.M. 1947.  On the other hand, Article IX and the transition clause of the 1972 Constitution express an intent to the contrary.

The supremacy of constitutional mandates is too well established to require citation.  This principle is summarized in 16 Am Jur 2d, Constitutional Law, § 56:

> "A written constitution is not only the direct and basic expression of the sovereign will, it is also the absolute rule of action and decision for all departments and offices of government with respect to all matters covered by it, and must control as it is written until it is changed by the authority which established it.  No function of government can be discharged in disregard of or in opposition to the fundamental law.  The state constitution is the mandate of a sovereign people to its servants and representatives.  No one of them has a right to ignore or disregard its mandates, and the legislature, the executive officers, and the judiciary cannot lawfully act beyond its limitations."

Montana is in accord.  O'Bannon v. Gustafson, 130 Mont. 402, 303 P.2d 938; State ex rel. Nagle v. Stafford, 97 Mont. 275, 34 P.2d 372; State ex rel. DuFresne v. Leslie, 100 Mont. 449, 50 P.2d 959.

Against this background we turn to the question of whether appellant has an existing right within the meaning of the key words of Article IX, Section 3(1), 1972 Constitution -- "All existing rights to the use of any waters * * *."  We construe these words in the light of the established principles of construction as stated in 16 C.J.S. Constitutional Law, § 19:

"The words of a constitution may not be ignored as meaningless * * *. If the language used is clear and unambiguous its meaning and intent are to be ascertained from the instrument itself by construing the language as it is written. Unless the content suggests otherwise, words are to be given their natural obvious or ordinary meaning. * * * There is no occasion for construction where the language is plain and definite."

See also: State ex rel. Stafford v. Fox-Great Falls Theatre Corp., 114 Mont. 52, 132 P.2d 689; Rider v. Cooney, 94 Mont. 295, 23 P.2d 261.

The word "rights" is limited only by the word "existing". Outside this limitation it extends to "All", a word that needs no definition. We agree with amicus curiae that priority in appropriation of water is a valuable right and quote with approval from the cited Utah case, Whitmore v. Murray City, 107 Utah 445, 154 P.2d 748, 751:

"* * * Although it is true that plaintiff does not and cannot have a right to the use of the water until he has completed his works and put it to a beneficial use, nevertheless, the right to proceed and acquire this right by complying with the statutory requirements is a valuable right and its value often depends upon its priority. * * *

"Property rights in water consist not alone in the amount of the appropriation, but, also, in the priority of the appropriation. It often happens that the chief value of an appropriation consists in its priority over other appropriations in the same natural stream. Hence, to deprive a person of his priority is to deprive him of a most valuable property right. * * *"

The word "existing" is to be examined in the context of the law under which appellant commenced its action. Rider v. Cooney, supra. Appellant's priority came into existence on November 30, 1972. Respondents' efforts herein to remove whatever priority appellant might have gained by commencing its appropriation is a recognition of the existence of that right.

The words "to" and "use" are to be examined in their relationship to the constitutionally declared policy of "public use" and also in the context of section 89-829, R.C.M. 1947. The filing of a petition under section 89-829 is the first step leading to "use", it being an integral part of putting water to public and

beneficial use. Limiting "use" to perfected or actual "use" would nullify the existing right of priority created by the filing.

When the inter-relationship of these words is considered together with the body of the law to which they relate, they retain their natural meaning. When so read, appellant had "existing rights" when the 1972 Constitution and the Montana Water Use Act went into effect.

Other rules governing constitutional construction fortify the meaning we have given to Article IX, 1972 Montana Constitution. 16 C.J.S. Constitutional Law §§ 14 to 16, state:

> "In construing a constitution, its essential character must always be kept in mind. * * * It is to be regarded as fundamental law to which all other laws must yield, and should be interpreted in such a manner as to carry out the broad general principles of government stated therein * * *.

> "A constitution, or provision thereof, should receive a reasonable and practical interpretation in accord with common sense. Confusion, ambiguity or contradiction should be avoided if possible. Of two alternative constructions, that which gives rise to fewer or less complicated questions should be favored. * * *

> "The prime effort or fundamental purpose in construing a constitutional provision, is to ascertain and give effect to the intent of the framers and of the people who adopted it. The Court, therefore should constantly keep in mind the object sought to be accomplished * * * and proper regard should be given to the evils, if any, sought to be prevented or remedied. * * *."

The construction we have given to Article IX, Section 3(1), 1972 Montana Constitution, would entitle appellant to proceed in the absence of the transition clause. The transition clause furnishes the final touch. It affirms the rights "recognized and confirmed" by Article IX.

In view of the disposition herein made it is not necessary to consider the legislative intent so extensively discussed by counsel. We note, however, that the Water Use Act discloses a legislative construction consistent with the constitutional provision. Legislative construction of constitutional provisions, though not conclusive, is entitled to great weight. Johnson v. City of Great

Falls, 38 Mont. 369, 99 P. 1059; State v. Toomey, 135 Mont. 35, 335 P.2d 1051.

Judgment of the district court is reversed.

_____
District Judge, sitting for Chief
Justice James T. Harrison.


We Concur:

_____

_____
Justices.


Chief Justice James T. Harrison and Justice Gene B. Daly took no part in this opinion, deeming themselves disqualified.