JUSTICE NELSON
concurs.
¶42 I concur in our Opinion, although I perceive a need for further remarks regarding our power to enforce non-self-executing constitutional rights.
¶43 First, in General Agric. Corp. v. Moore (1975), 166 Mont. 510, 534 P.2d 859, our view of what sort of provision is and is not self-executing was softened somewhat from the definition we adopted in State ex rel. Stafford v. Fox-Great Falls Theatre Corp. (1942), 114 Mont. 52, 132 P.2d 689. In General Agrie., we stated:
“A provision is self-executing when it can be given effect without the aid of legislation and there is nothing to indicate that legislation is contemplated in order to render it operative.... The fact that a right granted by a constitutional provision may be better or further protected by supplementary legislation does not of itself prevent the provision in question from being self-executing; nor does the self-executing character of a constitutional provision necessarily preclude legislation for the better protection of the right secured, or legislation in furtherance of the purposes, or of the enforcement, of the provision.”
*316 General Agric., 166 Mont. at 514, 534 P.2d at 862. Accordingly, I am not necessarily of the view that constitutional provisions beginning with the words “the legislature shall” must all be denominated as non-self-executing. See Cameron Carter and Kyle Karineh, Note, A Question of Intent: The Montana Constitution, Environmental Rights, and the MEIC Decision, 22 Pub. Land & Resources L. Rev. 97, 119-21 (2001) (hereinafter Carter). But see John L. Horwich, Montana’s Constitutional Environmental Quality Provisions: Self-Execution or Self-Delusion?, 57 Mont. L. Rev. 323 (1996).
¶44 Second, with the exception of rights protected under Article II of the Montana Constitution[1], there are those who might read our Opinion as suggesting that the legislature must always act upon a non-self-executing constitutional directive before a justiciable claim arises regarding the implementation of that provision. This raises a question: if the legislature fails or refuses to implement a non-self-executing constitutional directive, may a justiciable claim regarding the proper implementation of that clause eventually ripen? ¶45 As early as 1900, this Court considered the problem posed by legislative inaction with respect to non-self-executing clauses. The case of State ex rel. Whiteside v. First Judicial Dist. Ct. (1900), 24 Mont. 539, 63 P. 395, dealt with the Court’s constitutionally granted power of supervisory control as established in Article VIII, Section 2 of the 1889 Constitution. This section provided that such power was to be exercised “under such regulations and limitations as may be prescribed by law.” The Court questioned whether the power of supervisory control would be dormant in the absence of legislation indicating specific procedures for the exercise of that power. While acknowledging that such legislative inaction would represent an ostensible limitation on the exercise this power, the Court flatly rejected the notion that such a constitutionally granted power could be rendered ineffective by the legislature’s failure to enact guidelines for its use. Whiteside, 24 Mont. at 563, 63 P. at 400. In doing so, the Court noted that “the legislature cannot decrease the powers granted by the Constitution.” Whiteside, 24 Mont, at 563, 63 P. at 400. This view pays due respect to the paramount nature and inherently positive force of constitutionally established powers, as well as constitutionally granted rights.
¶46 When, in adopting their constitution, the people provided that a provision shall be implemented by the legislature, it cannot be gainsaid that the people had the right to expect, and do expect that *317 branch of government to, in good faith, carry out its constitutionally imposed obligation to legislate. In truth, non-self-executing constitutional directives maybe, for all intents and purposes, nullified by a legislature which chooses to ignore such directives. Simply put, non-self-executing clauses, whether delineating a power or establishing a right, are not rendered ineffective by a legislative failure to enact laws in furtherance of such clauses.
¶47 Other courts have recognized this principle, as well. For example, the Florida Supreme Court has stated:
The will of the people is paramount in determining whether a constitutional provision is self-executing and the modern doctrine favors the presumption that constitutional provisions are intended to be self-operating. This is so because in the absence of such presumption the legislature would have the power to nullify the will of the people expressed in their constitution, the most sacrosanct of all expressions of the people.
Gray v. Bryant (Fla. 1960), 125 So.2d 846, 851. Similarly, the Arizona Supreme Court has stated:
“The general presumption of law is that all constitutional provisions are self-executing, and are to be interpreted as such, rather than requiring further legislation, for the reason that, unless such were done, it would be in the power of the Legislature to practically nullify a fundamental of legislation.”
Morgan v. Board of Sup’rs (Ariz. 1948), 192 P.2d 236, 241. See also Carter at 116-17.
¶48 Starting with the assumption, as does our Opinion, that non-self-executing constitutional mandates are, by their very nature, enacted with the expectation that the legislature will act to implement the directive, a justiciable claim must, at some point, arise if the legislature fails or refuses to fulfill its obligation. Indeed, choosing not to act, is an act in and of itself. See State v. Weaver (1996), 276 Mont. 505, 509, 917 P.2d 437, 440 (a court’s failure to exercise its discretion is, in itself, an abuse of discretion (citations omitted)); State ex rel. Westercamp v. State Bd. of Chiropractic Exam’rs (1960), 137 Mont. 451, 457, 352 P.2d 995, 999 (board’s manifest abuse of discretion amounts to a failure to act at all).
¶49 The only real question is, at what point in time is there an unacceptable failure or refusal? I submit that that issue is best resolved on a case-by-case basis, taking into consideration the nature of the right, the length of time during which the legislature has failed or has refused to act, and the reason for its failure or refusal to *318 legislate.
¶50 Where the legislature fails or refuses to fulfill in its constitutional obligation to implement a non-self-executing constitutional right, and that failure or refusal is challenged in court, then it will necessarily fall to the courts to protect the right at least to the extent that the facts of the case require. Constitutional rights that cannot be enforced are illusory. It is as if those rights cease to exist as legal rights. Kloss v. Edward D. Jones & Co., 2002 MT 129, ¶ 58, 310 Mont. 123, ¶ 58, 54 P.3d 1, ¶ 58 (Nelson, J. concurring).
¶51 Put another way, legislation which would defeat or restrict a self-executing mandate of the constitution is beyond the power of the legislature to enact. Broderick v. Weinsier (N.Y. 1938), 16 N.E.2d 387, 388. Similarly, it follows, that a legislative failure to act upon a non-self-executing constitutional directive, which defeats or restricts the purpose of that mandate, is just as unacceptable as legislation which defeats or restricts the purpose of a self-executing right. Were that not so, the people could be and would be effectively stripped of important constitutional guarantees and protections by default.
¶52 As we stated in General Agrie.:
The supremacy of constitutional mandates is too well established to require citation.... “A written constitution is not only the direct and basic expression of the sovereign will, it is also the absolute rule of action and decision for all departments and offices of government with respect to all matters covered by it, and must control as it is written until it is changed by the authority which established it. No function of government can be discharged in disregard of or in opposition to the fundamental law. The state constitution is the mandate of a sovereign people to its servants and representatives. No one of them has a right to ignore or disregard its mandates, and the legislature, the executive officers, and the judiciary cannot lawfully act beyond its limitations.”
General Agrie., 166 Mont. at 515-16, 534 P.2d at 862-63.
¶53 Indeed, no branch of government has, in default of its constitutional obligation to act, the power to, de facto, write out of the constitution important rights and guarantees which the people sought to secure unto themselves, believing when they did so, that their elected officials would, in good faith, honor their command.
¶54 With those caveats, I concur.
JUSTICE COTTER joins in the concurrence of JUSTICE NELSON.

 See ¶ 18 and n.1, infra.