PARADISE RAINBOW ET AL., PLAINTIFFS AND RESPONDENTS,
v. FISH AND GAME COMMISSION ET AL., DEFENDANTS
AND APPELLANTS.

No. 11066.
Submitted October 5, 1966. Decided December 29, 1966.
421 P.2d 717.

Forrest H. Anderson, Atty. Gen., Chadwick H. Smith, Helena, for appellants.

Arnold A. Berger, Richard W. Anderson, and James J. Sinclair, Billings, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This appeal involves three mandamus actions brought by re-

spondents and an action for mandatory injunction brought by appellant. These actions were consolidated for trial and respondents prevailed throughout.

Paradise Rainbows and Trout Unlimited, respondents, are Montana close family corporations of Warren A. DePuy, and for convenience will be referred to as "DePuy." Appellant Fish and Game Commission of Montana will be referred to as the "Commission."

Respondent DePuy has developed a series of commercial trout ponds lying near the Yellowstone River in Park County and initiated mandamus actions to compel the Commission to issue licenses necessary for the operation of such ponds. Section 26-306, R.C.M.1947, provides for the licensing of "artificial" lakes and ponds, and states: "The term 'artificial lake or pond' as herein used shall not be construed to include any natural pond or body of water created by natural means, nor any portion of the stream bed or of the lake bed thereof, but shall be limited only to such bodies of water created by artificial means or diversion of water and shall not exceed five hundred (500) acres of surface area." The Commission refused to license some of DePuy's ponds on the grounds that they were located on natural stream beds and were therefore not qualified under the provisions of section 26-306. After mandamus actions were filed by DePuy, the Commission sought a mandatory injunction requiring DePuy to construct a fishladder on a diversion dam pursuant to section 26-104(9), R.C.M.1947. We shall initially consider issues raised by the mandamus actions to obtain licenses on the ponds. While we shall not separately enumerate and discuss each specification of error, our discussion will attempt to encompass them all. At the same time, respondents would have us enunciate answers to delineated questions. Our discussion following will suffice.

On April 26, 1957, DePuy appropriated the waters of Armstrong Spring Creek and constructed a diversion dam thereon to supply water for his series of fish ponds. Water from

Armstrong Spring Creek was conveyed by ditches to ponds constructed on the old Trail Creek channel and was returned to the Yellowstone River after having flowed through these ponds. DePuy was issued a pond license in 1958 which was periodically renewed until, 1962, his project undergoing continuous development. In January of 1963, DePuy requested an extension of his license to cover new ponds. A meeting was held on May 9, 1963, to determine which ponds the license would cover. Present were DePuy, an attorney representing the Commission, the District Warden Supervisor at Bozeman, the State Game Warden at Livingston, and the County Attorney of Park County. These people inspected DePuy's operation and it was determined that all existing ponds qualified. A license was issued on June 13, 1963, covering all artificial ponds on DePuy's property.

In the meantime, highway construction had commenced which forced DePuy to move his fish hatchery and which altered the situation of some of the ponds. On November 15, 1964, DePuy was notified that his fishing pond license was being held by the Commission pending completion of the highway construction. It was not until May 19, 1965, that the Commission issued a license covering two existing ponds. At this time the Commission refused to license ponds designated as ponds number two, six, seven and eight, claiming that these were located over portions of natural streambeds.

Pond number two is located on Trail Creek, a small stream which flows into the Yellowstone River. The Commission maintains that this creek is a "natural avenue for fish migrating to its headwaters to spawn each year * * *." However, evidence presented by DePuy indicates that the headwaters of Trail Creek have been diverted for irrigation for more than forty years and that there is no continuous flow between the upper and lower portions of the creek. Tests conducted by the Commission indicated that there were no fish in the upper part of the creek.

Aerial photographs were introduced by the Commission in an attempt to prove that lower Trail Creek contained a substantial volume of water prior to the construction of the diversion dam on Armstrong Creek. The position of the Commission is that since water is diverted from Armstrong Creek into lower Trail Creek, the photograph taken before such diversion occurred is the best evidence of the amount of water naturally contained in lower Trail Creek. The trial judge viewed the entire fishpond system and in his Findings of Fact stated that "the Trail Creek channel utilized by the relators in their private ponds had been virtually dry for forty years * * *." Pond number two, on Trail Creek, had also been licensed in 1962. We feel that the aerial photographs are a poor indication of the amount of water in lower Trail Creek, particularly when viewed by one inexperienced in analyzing such photographs. There is no indication in the record that the Commission made any attempt to qualify the photographs through expert testimony. No foundation of any sort supports the use of these pictures and they do not suggest anything of which we might take judicial notice. The district judge was in a better position to make this factual determination.

DePuy also sought to license a pond located on upper Trail Creek. The Commission indicates that a pond so located would be licensed when it is actually constructed, and it does not appear in this appeal that a serious issue is raised with respect to ponds constructed on upper Trail Creek.

The third mandamus action brought by DePuy concerns three ponds (numbers six, seven and eight) built on DePuy Spring Creek. This spring-fed creek arises and flows into the Yellowstone River entirely on DePuy's property. While ponds located on this creek had previously been licensed, the position of the Commission now is that this creek "is an integral part of the tributary system of the Yellowstone River and flows a continuous stream of water over a natural streambed, affording a natural avenue for fish migrating to its headwaters to spawn

each year, and providing a natural fishery during the seasons of the year when fishing is legally permitted." The trial judge ruled that DePuy Spring Creek was "nothing more than a small spring rising on the lands of DePuy."

The trial judge found that DePuy's entire system of diversion ditches and ponds is entirely artificial and man made and therefore subject to licensing under the provisions of section 26-306, R.C.M.1947. We can find no grounds for interfering with these factual conclusions.

The basic legal issue presented with respect to the mandamus actions is whether the district court improperly interfered with the discretion of the Commission to determine which ponds are subject to licensing. As a general rule mandamus is available only to compel performance of a clear legal duty not involving discretion. McCarten v. Sanderson, 111 Mont. 407, 109 P.2d 1108, 132 A.L.R. 1229. "But even where discretion is involved, if there has been such an abuse as to amount to no exercise of discretion at all, mandamus will lie to compel the proper exercise of the powers granted." Skaggs Drug Center v. Mont. Liquor Control Board, 146 Mont. 115, 124, 404 P.2d 511, 516. This court has indicated that arbitrary or capricious action by an administrative board is an abuse of discretion. State ex rel. Sanders v. Hill (P.E.R.S.), 141 Mont. 558, 381 P.2d 475. It appears from the record that the Commission dealt with DePuy in an arbitrary fashion to the extent that it refused to renew a license for ponds which had previously been licensed and which were not significantly changed by the highway construction. This inconsistency is aggravated by the fact that these ponds were initially licensed after the meeting at the DePuy ranch at which the Commission was fully represented. At that time the Commission had an opportunity to examine the ponds and found them compatible with statutory requirements.

In response to interrogatories propounded by DePuy, the Commission indicated that an important criterion used by

them in determining whether ponds were subject to licensing was the effect on natural fishways. The Commission admits that licenses were issued for ponds constructed on natural swamps and small streams because such waters were not natural fish habitats. We are constrained to feel that the actual concern of the Commission is not whether ponds are constructed over natural stream beds but whether a pre-existent fish population occurs at the pond site. Yet in this instance the Commission insists that section 26-306 be applied literally, the emphasis being placed on "natural stream beds." There is evidence of vacillation on the part of the Commission in selecting and applying standards governing private fish pond licenses. Under such circumstances it was proper for the district court to entertain a mandamus action brought by DePuy to protect a valuable economic asset systematically developed with the apparent consent and approval of the Commission. We do not wish to substitute our judgment for that of the Commission, but only insist that the Commission's sound discretion is consistently and fairly exercised. We therefore hold that the district court did not err in ruling that the Commission should issue a private fish pond license covering ponds constructed on Trail Creek and DePuy Springs Creek.

On November 20, 1964, DePuy was directed by the commission to construct a fishladder over the dam on Armstrong Spring Creek, pursuant to section 26-104(9), R.C.M.1947. DePuy refused to comply and the Commission initiated an action for mandatory injunction to compel the building of the fishladder.

As we have seen, the dam on Armstrong Spring Creek was used to divert water for use in DePuy's system of fishponds. On April 26, 1957, DePuy made a lawful appropriation of 10,000 miner's inches of the waters of Armstrong Spring Creek and diverts the entire flow of the creek by means of an earthfill dam. The creek is about one mile in length and the diver-

sion dam occurs at a point approximately one-eighth of a mile before the creek empties into the Yellowstone River.

Section 26-104, R.C.M.1947, enumerates the powers and duties of the Commission, and subdivision nine of that section provides: "It shall be its duty to furnish plans for, and to direct and compel the construction and installation and repair of fish ladders upon dams and other obstructions in streams, which, however, shall be installed and maintained at the expense of the owners of said dam or other obstruction."

DePuy has resisted the injunction on two general grounds. First, that the release of his water over the fishladder would be a taking of property without due process, and second, that the Commission has never required a fishladder to be constructed previously in Montana and has arbitrarily elected to require a fishladder which would be of dubious practical value.

The Commission does not deny that DePuy has a valid appropriative right to the waters of Armstrong Spring Creek. In fact the Commission made no attempt to prove that the amount of water actually put to a beneficial use by DePuy was less than the amount claimed and diverted. The Commission does maintain that the public has a prior right in the waters of the creek which would require DePuy to release some water through a fishladder. The public right urged by the Commission would be based on the fact that the public had used the creek as a fishing stream and natural fish hatchery before DePuy built his dam. Under the rule of Bullerdick v. Hermsmeyer, 32 Mont. 541, 554, 81 P. 334, DePuy could not use the water to the detriment of prior rights.

Such a public right has never been declared in the case law of this state. California, an appropriation doctrine jurisdiction, whose Constitutional provisions relating to water rights are virtually the same as Article III, § 15 of the Montana Constitution, has recognized such a right and has upheld statutes requiring fishways. People v. Glenn-Colusa Irr. Dist., 127 Cal.App. 30, 15 P.2d 549. Under the proper circumstances we feel that such a

public interest should be recognized. This issue will inevitably grow more pressing as increasing demands are made on our water resources. An abundance of good trout streams is unquestionably an asset of considerable value to the people of Montana.

While the Commission's argument is plausible, we cannot yield to it, given the facts at hand. DePuy constructed the dam in April, 1957, and it was inspected by members of the Commission on several occasions. More than seven years later the Commission requested DePuy to construct the fishladder; a mandatory injunction was sought after DePuy brought mandamus actions to obtain a license for his ponds.

Armstrong Spring Creek is a short stream and is obviously not a major migratory route for large numbers of fish. The Commission says in their brief, "The statute (section 26-104(9)) has only been enforced *once* since its enactment in 1921, which certainly shows in itself that there is no abusive application of the statute." We have drawn exactly the opposite conclusion. Under Article III, § 15 of the Montana Constitution, a private beneficial use of water is declared to be a public use. Individuals who have put water to a beneficial use should not have their rights arbitrarily diluted, under claim of sovereign rights or otherwise.

It is the law of this state that injunctions are extraordinary remedies, granted with caution, and in the exercise of sound judicial discretion. State ex rel. Blackwood v. Lutes, 142 Mont. 29, 381 P.2d 479. An even stronger showing is required before a mandatory injunction may issue. It is apparent that the facts presented to the district court were insufficient to move its discretion. We agree that the Commission is not entitled to the equitable relief sought. Below, the four separate actions were consolidated, tried and ruled upon as one. But a single appeal was taken. Thus we rule as on a single judgment.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUS-TICES JOHN C. HARRISON, DOYLE and ADAIR, concur.