DA 08-0248

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 181

BOSTWICK PROPERTIES, INC.,

Petitioner and Appellee,

v.

MONTANA DEPARTMENT OF NATURAL
RESOURCES AND CONSERVATION,

Respondent and Appellant.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-07-917A
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Anne W. Yates (argued), Brian Bramblett, Candace F. West, Montana
Department of Natural Resources and Conservation, Helena, Montana

For Appellee:

Brian K. Gallik (argued), Trent M. Gardner, Goetz, Gallik & Baldwin,
P.C., Bozeman, Montana

Matthew Williams, Williams & Jent, PLLP, Bozeman, Montana

For Amicus Curiae PPL Montana, LLC:

Holly Jo Franz (argued), Franz & Driscoll, PLLP, Helena, Montana

For Amicus Curiae Montana Department of Fish, Wildlife & Parks:

Robert N. Lane, Rebecca Jakes Dockter, Montana Fish, Wildlife & Parks,
Helena, Montana

For Amicus Curiae Montana Trout Unlimited:

Stan Bradshaw, Montana Trout Unlimited, Helena, Montana

Laura S. Zeimer, Montana Trout Unlimited, Bozeman, Montana

For Amicus Curiae Association of Gallatin Agricultural Irrigators:

David Weaver, Nash, Zimmer, Weaver & Grigsby, Bozeman, Montana

For Amicus Curiae Montana Association of Realtors® and Montana Building Industry Association:

John E. Bloomquist, Abigail J. St. Lawrence, Doney Crowley Bloomquist Payne Uda, P.C., Helena, Montana

_____

Argued and Submitted:  April 22, 2009

Decided:  May 21, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 The Montana Department of Natural Resources and Conservation (DNRC) appeals an order from the Eighteenth Judicial District Court granting a writ of mandamus, or writ of mandate, to Bostwick Properties, Inc. (Bostwick). This writ directed DNRC to issue a water use permit to Bostwick for the construction of a municipal water system for the Lazy J South subdivision, which Bostwick is developing in Gallatin County. We reverse the District Court's issuance of the writ and remand this matter for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On December 22, 2005, Bostwick filed an application with the DNRC for a water use permit in order to use water from an aquifer for the Lazy J South subdivision. Prior to submitting the application, Bostwick had conducted drilling and extensive testing of this aquifer which is located approximately 1300 feet below the earth's surface.

¶3 DNRC is the state agency responsible for issuing water use permits. The requirements for such permits are set forth in Title 85, chapter 2, part 3 of the Montana Code Annotated. The first step in this process requires the person or entity seeking a water permit to file an application with DNRC. Section 85-2-302, MCA. Once DNRC has determined the application is "correct and complete," DNRC then provides public notice of the application and gives other parties an opportunity to file objections. Sections 85-2-307 and -308, MCA. If the DNRC determines that valid objections are presented, it then holds a contested case hearing pursuant to the Administrative Procedure Act, Title 2, chapter 4, part 6. Section 85-2-309, MCA.

3

¶4     If no objections have been received, DNRC has 120 days from the last date of publication of notice to either "grant, deny, or condition" the application. Section 85-2-310(1), MCA. If objections have been received or a hearing has been held, then DNRC has 180 days from the last date of publication of notice to do the same. Section 85-2-310(1), MCA. The DNRC also has the discretion to extend these deadlines by 60 days. Section 85-2-310(1), MCA. DNRC is prohibited from denying or modifying a permit "unless the applicant is first granted an opportunity to be heard." Section 85-2-310(3), MCA. Accordingly, "[i]f an objection is not filed against the application but the department is of the opinion that the application should be denied or approved in a modified form or upon terms, conditions, or limitations specified by it, the department shall prepare a statement of its opinion and its reasons for the opinion." Section 85-2-310(3), MCA. DNRC is required to then serve this statement of opinion upon the applicant, giving the applicant an opportunity to request a hearing on the application within 30 days after notice of the statement of opinion has been mailed. Section 85-2-310(3), MCA.

¶5     The criteria for evaluating whether to issue, deny, or condition a water use permit are found in § 85-2-311, MCA, and read as follows:

> **85-2-311.  Criteria for issuance of permit.** (1) A permit may be issued under this part prior to the adjudication of existing water rights in a source of supply. In a permit proceeding under this part, there is no presumption that an applicant for a permit cannot meet the statutory criteria of this section prior to the adjudication of existing water rights pursuant to this chapter. In making a determination under this section, the department may not alter the terms and conditions of an existing water right or an issued certificate, permit, or state water reservation. Except as provided in subsections (3) and (4), the department shall issue a permit if

4

the applicant proves by a preponderance of evidence that the following criteria are met:

(a) (i) there is water physically available at the proposed point of diversion in the amount that the applicant seeks to appropriate; and

(ii) water can reasonably be considered legally available during the period in which the applicant seeks to appropriate, in the amount requested, based on the records of the department and other evidence provided to the department. Legal availability is determined using an analysis involving the following factors:

(A) identification of physical water availability;

(B) identification of existing legal demands on the source of supply throughout the area of potential impact by the proposed use; and

(C) analysis of the evidence on physical water availability and the existing legal demands, including but not limited to a comparison of the physical water supply at the proposed point of diversion with the existing legal demands on the supply of water.

(b) the water rights of a prior appropriator under an existing water right, a certificate, a permit, or a state water reservation will not be adversely affected. In this subsection (1)(b), adverse effect must be determined based on a consideration of an applicant's plan for the exercise of the permit that demonstrates that the applicant's use of the water will be controlled so the water right of a prior appropriator will be satisfied;

(c) the proposed means of diversion, construction, and operation of the appropriation works are adequate;

(d) the proposed use of water is a beneficial use;

(e) the applicant has a possessory interest or the written consent of the person with the possessory interest in the property where the water is to be put to beneficial use, or if the proposed use has a point of diversion, conveyance, or place of use on national forest system lands, the applicant has any written special use authorization required by federal law to occupy, use, or traverse national forest system lands for the purpose of diversion, impoundment, storage, transportation, withdrawal, use, or distribution of water under the permit;

(f) the water quality of a prior appropriator will not be adversely affected;

(g) the proposed use will be substantially in accordance with the classification of water set for the source of supply pursuant to 75-5-301(1); and

(h) the ability of a discharge permitholder to satisfy effluent limitations of a permit issued in accordance with Title 75, chapter 5, part 4, will not be adversely affected.

(2) The applicant is required to prove that the criteria in subsections (1)(f) through (1)(h) have been met only if a valid objection is filed. A

valid objection must contain substantial credible information establishing to the satisfaction of the department that the criteria in subsection (1)(f), (1)(g), or (1)(h), as applicable, may not be met. For the criteria set forth in subsection (1)(g), only the department of environmental quality or a local water quality district established under Title 7, chapter 13, part 45, may file a valid objection.

¶6 After filing the application, Bostwick's hydrologists entered into communications with DNRC concerning its application. In July 2006, DNRC terminated Bostwick's application for allegedly taking too long to submit certain information which DNRC required. On November 30, 2006, Bostwick filed another application for a new water use permit for the same aquifer. On January 29, 2007, DNRC sent Bostwick a letter identifying technical deficiencies with its application. Bostwick subsequently submitted additional information.

¶7 On February 13, 2007, DNRC issued a document directing that public notice be given of Bostwick's application. At this point in the application process Bostwick's application was considered "correct and complete," *see* §§ 85-2-307 and -308, MCA, meaning "that the information required to be submitted conforms to the standard of substantial credible information and that all of the necessary parts of the form requiring the information have been filled in with the required information." Section 85-2-102(8), MCA. Notice was published and the Department of Fish, Wildlife, and Parks (DFWP) and Montana Trout Unlimited (Trout Unlimited) both filed timely objections based on concerns of potential depletions or reductions to instream flow needs in the Gallatin River which might arise from Bostwick's proposed use of water. Bostwick later settled

with DFWP and Trout Unlimited and both parties withdrew their objections. Bostwick notified DNRC of this settlement.

¶8    On July 18, 2007, Bostwick received another application review form from DNRC. Bostwick's hydrologists reviewed the form and provided additional information to the DNRC about its permit application and related groundwater system. By August 2007, more than 180 days had elapsed since the publication of Bostwick's application for a water use permit, yet DNRC had not taken action on it. Nor had the DNRC requested an extension of time in order to process the application. This failure on behalf of DNRC was clearly contrary to the timeframes for processing water use permit applications as set forth in § 85-2-310(1), MCA. *See* Opinion, ¶ 4.

¶9    On December 10, 2007, Bostwick applied to the Eighteenth Judicial District Court for a writ of mandate directing DNRC to comply with § 85-2-310, MCA, and issue a decision granting its application for the water use permit. The writ of mandate is a statutory remedy which permits a court "to compel the performance of an act that the law specially enjoins as a duty resulting from an office, trust, or station or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled and from which the party is unlawfully precluded by the lower tribunal, corporation, board, or person." Section 27-26-102(1), MCA. In arguing for the writ, Bostwick asserted that DNRC's failure to either deny the application or issue a statement of opinion describing its reasons for the denial within the statutory timeframes, mandated that DNRC take appropriate action and approve the water permit.

¶10 On December 11, 2007, the District Court ordered DNRC's presence at a show cause hearing concerning the issuance of the writ. On December 17, 2007, DNRC issued a statement of opinion on Bostwick's water use permit pursuant to § 85-2-310(3), MCA, stating that Bostwick failed to satisfy the required criteria in § 85-2-311, MCA. Specifically, DNRC concluded that Bostwick met its burden of proof with respect to § 85-2-311(1)(c) through (e), MCA, but failed to do so with respect to § 85-2-311(1)(a) and (b), MCA.[1] On December 24, 2007, DNRC then moved to quash Bostwick's motion for a writ of mandate.

¶11 DNRC, Bostwick, and other interested parties attended the scheduled show cause hearing and presented arguments. After the hearing, but before the District Court issued a final ruling, Bostwick filed a motion seeking a writ of supervisory control and temporary and injunctive relief, as well as a writ of prohibition and writ of mandate, in an effort to prevent DNRC from taking any further action on its water use permit. Bostwick also asked the District Court to order DNRC to show cause as to why it was not entitled to a contested case hearing on its application. On February 11, 2008, the District Court concluded that Bostwick's requests for supervisory control and temporary and preliminary injunctive relief were moot, but ordered DNRC to file an answer to Bostwick's motion and to address whether or not Bostwick was entitled to a contested case hearing.

---

[1] Because we are not reaching the merits of Bostwick's application at this point, we decline to delve into the precise hydrological and scientific reasons why DNRC concluded that Bostwick failed to meet the required criteria, but simply note DNRC concluded that Bostwick had in fact failed to do so.

¶12 On May 12, 2008, after the pending motions were fully briefed, the District Court issued a written order denying DNRC's motion to quash, granting Bostwick's motion for a writ of mandate, and further ordering that Bostwick be awarded reasonable attorney fees and costs incurred in bringing its action. The reasoning for the District Court's decision to grant the writ can be briefly described as follows. First, the District Court observed that DNRC had failed to take proper action on Bostwick's permit application within the timeframes established under Title 85, chapter 2, part 3, MCA, in spite of the fact that it had all the information required to do so. Second, the District Court determined that in November 2007, DNRC had approved a water use permit submitted by the Yellowstone Mountain Club for an underground well in the same water basin as Bostwick's proposed use, and that, as a hydrological matter, there was no basis for distinguishing between Bostwick's proposed use and that already granted to the Yellowstone Club. Third, the District Court concluded that the applicable statutes imposed a deadline on DNRC to act on an application, and that if it fails to notify an applicant who has submitted a "correct and complete" application of defects in the application, or otherwise seeks an extension of time, it is mandated to approve the permit. Further, the District Court concluded that DNRC may issue a statement of opinion only if there no objections to the application for a water use permit; otherwise, DNRC can only hold a contested case hearing on the application. Here, because Trout Unlimited and DFWP had submitted previous objections, DNRC was legally prohibited from issuing a statement of opinion, in spite of the fact that those objections were later withdrawn.

¶13 Given the circumstances before it, including the fact that DNRC had failed to act in strict accordance with the statutes in Title 85, chapter 2, part 3, MCA, and had already approved the water use permit for the Yellowstone Club, the District Court concluded that DNRC's actions were arbitrary and that a writ of mandate was an appropriate remedy. Importantly, the District Court concluded that under the applicable statutes, once an application is considered "correct and complete," DNRC must act to grant, deny, or modify the proposed water use permit, and that if it fails to take such action within the required timeframe, the criteria under § 85-2-311, MCA, are presumed satisfied and "[b]y clear statutory mandate, the only remaining option is the ministerial option of granting the permit." Accordingly, the District Court issued the writ of mandate directing DNRC to immediately issue Bostwick the water use permit based on the correct and complete application it had submitted. The District Court also awarded Bostwick reasonable attorney fees and costs incurred in bringing the action against DNRC.

¶14 The DNRC, along with amicus curiae Trout Unlimited, the Association of Gallatin Agricultural Irrigators, PPL Montana, LLC, and DFWP, now appeal this order. In its briefing before this Court, DNRC states that the parties have reached an agreement concerning the attorney fees and costs issues related to the litigation in District Court. DNRC asserts that the only pending issue regarding attorney fees concerns whether Bostwick is entitled to attorney fees and costs for defending the District Court's order on appeal. Because we are reversing the District Court's decision, we do not reach the issue of attorney fees and costs incurred by Bostwick on appeal. Thus we state the sole issue on appeal as follows:

*Did the District Court err in granting Bostwick's motion for a writ of mandamus?*

## STANDARD OF REVIEW

¶15 A district court's decision to issue or deny a writ of mandamus is a conclusion of law which we review for correctness. *Belgrade Educ. Assn. v. Belgrade Sch. Dist. No. 44*, 2004 MT 318, ¶ 6, 324 Mont. 50, 102 P.3d 517.

## DISCUSSION

¶16 In *Belgrade Educ. Assn.*, we described the writ of mandate as follows:

> Section 27-26-102, MCA, which authorizes the issuance or denial of writs of mandate, provides the following:
>
> > (1) A writ of mandamus may be issued by the supreme court or the district court or any judge of the district court to any lower tribunal, corporation, board, or person to compel the performance of an act that the law specially enjoins as a duty resulting from an office, trust, or station or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled and from which the party is unlawfully precluded by the lower tribunal, corporation, board, or person.
> > (2) The writ must be issued in all cases in which there is not a plain, speedy, and adequate remedy in the ordinary course of law.
>
> The clear legal duty referenced in subsection (1) cannot be a mere discretionary act. Once a clear legal duty is established, the trial court must issue a writ of mandate if no speedy and adequate remedy exists. See *Smith v. County of Missoula*, 1999 MT 330, ¶ 28, 297 Mont. 368, ¶ 28, 992 P.2d 834, ¶ 28 (citations omitted).

*Belgrade Educ. Assn.*, ¶ 7.

¶17 An act is considered "ministerial where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment. Where the act to be done involves the exercise of discretion or

judgment, however, it is not deemed merely ministerial." *Beasley v. Flathead Co. Bd. of Adjustments*, 2009 MT 120, ¶ 17, 350 Mont. 171, 205 P.3d 812 (citing *Smith*, ¶ 28).

¶18 Additionally, we recently stated in *Beasley* that "a writ of mandate will not lie to correct or undo an action already taken. An action already done cannot be undone by mandamus, however erroneous it may have been." *Beasley*, ¶ 15 (citing *State ex. rel. Popham v. Hamilton City Council,* 185 Mont. 26, 29, 604 P.2d 312, 314 (1979)).

¶19 As a threshold matter, we conclude that the District Court erred in granting the writ of mandate here because the writ was granted *after* DNRC had already issued a statement of opinion to the effect that Bostwick had failed to satisfy the required criteria under § 85-2-311, MCA, by a preponderance of the evidence. Since the statement of opinion has been issued, regardless of its propriety or whether DNRC had the statutory or jurisdictional authority to issue it, such action "cannot be undone by mandamus, however erroneous it may have been." *Beasley*, ¶ 15. Thus, as a matter of law, a writ of mandate was not an appropriate remedy in this case, and the District Court erred in granting Bostwick's motion.

¶20 Furthermore, the District Court erred in concluding that DNRC had a "clear legal duty" to approve the water use permit in this case, and that the approval was simply a ministerial act, defined "with such precision and certainty as to leave nothing to the exercise of [the] discretion or judgment" of the DNRC. *See Beasely*, ¶ 17. In granting the writ, the District Court reasoned that DNRC had a clear legal duty to approve the water use permit because: (1) DNRC had determined Bostwick's application was "correct and complete" under § 85-2-311, MCA; (2) legal notice was published with

12

respect to Bostwick's application; (3) objections were timely filed; and (4) those objections were timely resolved. Essentially, the District Court concluded that once DNRC made a decision that Bostwick's application was "correct and complete," it had 180 days to conduct a hearing on any objections, and if the objections were resolved it was required, as a matter of law, to issue the permit.

¶21 This analysis is incorrect. DNRC is required grant a permit only if any objections are resolved and if the § 85-2-311, MCA, criteria are proven by a "preponderance of the evidence." The determination of whether an application has satisfied these criteria is clearly a discretionary act on the part of DNRC. Bostwick has the burden of proving that it has met these criteria, but has not yet done so. While DNRC did conclude in its statement of opinion that Bostwick met its burden of proof with respect to § 85-2-311(1)(c) through (e), MCA, it also found that Bostwick did not prove by a preponderance that it satisfied § 85-2-311(1)(a) and (b), MCA. Because Bostwick has not satisfied these criteria, as a matter of law DNRC is simply not under a mandatory legal duty to issue the water permit at this time.

¶22 Once Bostwick submitted an application which was "correct and complete," and thus eligible to go forward in the permit consideration process, DNRC had a clear, legal duty to process that application in accordance with the applicable timeframes and procedures in Title 85, chapter 2, part 3, MCA. DNRC clearly failed to uphold this duty, and could have been commanded to make a decision one way or another as soon as those timeframes had lapsed. But the issuance of the water permit itself does not become a clear, legal duty until Bostwick proves, by a preponderance of the evidence, that the

13

required criteria have been satisfied. This has not yet happened as is clear from DNRC's statement of opinion. Now that the statement of opinion has been issued, DNRC has signaled its intention to deny the application, and there are no pending objections, DNRC is under a clear, legal duty to provide Bostwick an opportunity to be heard on its application under § 85-2-310(3), MCA, and process Bostwick's application in a timely manner, consistent with the procedures set forth in the applicable statutes.

**CONCLUSION**

¶23 We conclude the District Court erred in granting the writ of mandate. We reverse the writ of mandate and remand this matter to the District Court. Upon receipt of this Court's decision, Bostwick will have 30 days to request a hearing with the DNRC on its application consistent with the timeframes set forth in § 85-2-310(3), MCA.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

Justice James C. Nelson, concurring.

¶24 I join the Court's Opinion for two reasons. First, I agree that, here, the District Court went one step too far. Instead of simply directing DNRC to get its act together and make *a* decision—which would have been completely appropriate in this case—the court

directed DNRC *how* to rule. Second, while mandamus is an equitable remedy, and while the naked equities in this case clearly favor Bostwick, we would be setting an intolerable precedent if we permitted the district courts to direct what is, at bottom, a discretionary agency decision. Though DNRC more than deserves the decision it got from the District Court in this case, hopelessly muddling our mandamus caselaw is too high a price to pay for affirming the court's decision.

¶25 That said, however, I would be remiss in failing to compliment the District Court Judge for his thorough, well-researched, and well-written decision. Had I been in his shoes, I would likely have entered substantially the same findings of fact and conclusions of law, given the strict requirements of the statutory scheme and the record of DNRC's general mishandling of Bostwick's application. I sympathize, also, with Bostwick in its obvious and understandable frustration. Justice Rice's comments hit the nail on the head. *See* Concurrence, ¶¶ 28-30, *infra*.

¶26 Finally, DNRC began its oral argument on appeal by repining that its permitting program was "in shambles" because of the District Court's decision in this case. To the extent that is true, the District Court is not to blame. I do not doubt that DNRC is overworked, understaffed, and underfunded. The agency can thank the executive and legislative branches of government for that. The courts do not levy taxes or appropriate money. I also agree with DNRC's explicit and implicit observations that the statutory scheme for permitting is, in many instances, unrealistic, confusing, and contradictory. Again, DNRC can, for the most part, thank the Legislature. The courts do not write statutes. However, at least some of this confusion and contradiction in the law has been

caused by DNRC itself in its zeal to have the Legislature statutorily overturn this Court's decisions. *See Confederated Salish and Kootenai Tribes v. Clinch*, 2007 MT 63, ¶¶ 66, 126, 336 Mont. 302, 158 P.3d 377 (Nelson, J., dissenting).

¶27 I understand and appreciate the District Court's decision, but I concur in ours.


/S/ JAMES C. NELSON


Justice Jim Rice, concurring.

¶28 I concur in the decision of the Court because I agree that the governing statutes do not clearly provide that DNRC must "grant" a permit if it has missed the statutory deadlines, particularly where a general purpose of the statutory scheme is to protect senior appropriators. Thus, mandamus can issue only to compel DNRC to act, not to grant.

¶29 I agree with many of Justice Nelson's thoughts as well, and further believe that DNRC's actions are nothing less than arbitrary, if not outrageous. The DNRC has had the essence of this application before it since December of 2005. Following the filing of Bostwick's second application, and the additional work completed by Bostwick at DNRC's request, DNRC violated the 180 day processing deadline, failed to request an additional 60 days as provided by statute, and all the while did not indicate to Bostwick that the Department held any reservations about the application. When Bostwick's further inquiries about the permit were ignored by DNRC, Bostwick was forced, in December of 2007, to seek the District Court's issuance of an order to show cause.

16

Apparently realizing that it was required to follow the law, and that a court would hold it accountable, DNRC magically kicked out a decision on Bostwick's application in just six days—*denying* it, of course, and advising Bostwick for the first time of DNRC's concerns about the application. DNRC's quick action would be commendable if it hadn't been taken to rectify DNRC's earlier malfeasance and to short-circuit a court's review of that malfeasance. Then, when Bostwick asked to be heard about the denial, DNRC obliged Bostwick by setting a hearing in front of the same official who had written the DNRC's opinion denying the permit. Whether the DNRC was attempting to be humorous or capricious, I do not know, but on its face this raises potential due process concerns.

¶30 Only because I cannot conclude that the remedy requested by Bostwick is available under the statutes as written or under our decision in *Paradise Rainbows v. Fish and Game Comm'n*, 148 Mont. 412, 421 P.2d 717 (1966) allowing mandamus for failing to exercise discretion, I concur.

/S/ JIM RICE

Justice John Warner dissents.

¶31 I dissent. The result of the Court's decision is that the time limitations in § 85-2-310, MCA, are ignored and Bostwick is left with no remedy. The concurrences of Justices Rice and Nelson recognize this result, but agree there is no remedy.

17

¶32    In my view, mandamus may lie in situations where the duty involved is discretionary, but the discretion has been abused to such an extent that it amounts to no exercise of discretion at all. *Paradise Rainbows v. Fish and Game Commission*, 140 Mont. 412, 417, 421 P.2d 717, 720 (1966). In this instance, DNRC so abused its discretion in completely ignoring the mandatory time provisions in § 85-2-310, MCA, it lost its discretion. Thus, I agree with the District Court that mandamus is an appropriate remedy and lies to require DNRC to issue the permit.

¶33    When DNRC makes the initial designation that an application for a water use permit is correct and complete, it has reached a substantive decision that the application is supported by probable and credible evidence. *See* § 85-2-102(8), MCA (defining "correct and complete" as "substantial credible information"); § 85-2-102(22), MCA (defining "substantial credible information" as "probable, believable facts sufficient to support a reasonable legal theory upon which [DNRC] should proceed with the action requested by the person providing the information"). Section 85-2-311, MCA, provides that the criteria for granting a permit must be proven by a preponderance of the evidence. A preponderance of the evidence is evidence showing the elements at issue are more probably true than not. *State v. Scarborough*, 2000 MT 301, ¶ 52, 302 Mont. 350, 14 P.3d 1202, (citing 2 McCormick on Evidence § 339 (4th ed. 1992)). I see no difference between "probable believable facts" and a "preponderance of the evidence."

¶34    This parity of terms forces the conclusion that DNRC's initial designation of an application as correct and complete is substantive and indicates that the applicant has established a prima facie case for granting a permit. When, as in this case, DNRC fails to

2

rebut the applicant's prima facie showing within 180 days from the date of publication,[1] its initial designation of correct and complete must stand, and a district court may require by writ of mandate that DNRC issue the permit.

¶35 Rule 36.12.1601, ARM, states that "providing correct and complete information is not necessarily the same as proving the statutory criteria." I interpret this to mean that DNRC has an additional 180 days after its initial correct and complete designation to continue its examination of the application. But within this time it must then grant, deny or condition the applied for permit. However, if the 180 days expires with no action by DNRC, its initial determination that an application is correct and complete serves as a substantive determination that the permit should issue.

¶36 As noted by the District Court, the time periods in § 85-2-310, MCA, are established to provide for the orderly review and processing of applications, protect an applicant's due process rights, and serve as a mandatory deadline by which DNRC must act after it determines that an application is correct and complete. I agree with the District Court that the language of § 85-2-310, MCA, plainly and unambiguously mandates DNRC to take some action within the designated time period. Applicants must have an enforceable method of redress to ensure DNRC does not string them along endlessly, either in a sea of litigation or in limbo waiting for DNRC to take action.

¶37 I dissent from this Court's decision to deny Bostwick any real remedy.

/S/ JOHN WARNER

---

[1] Section 85-2-310, MCA, provides different time periods within which DNRC must take action, depending on whether an objection is filed. For simplicity sake, I will use 180 days as the time period in this discussion.

3