FILED

06/03/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0362

DA 24-0362

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 119

CASCADE COUNTY,

      Petitioner and Appellant,

   v.

MONTANA PETROLEUM TANK RELEASE
COMPENSATION BOARD,

      Respondent and Appellee.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADV-2016-558
Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jack G. Connors, Jacqueline R. Papez, Doney Crowley P.C., Helena, Montana

      For Appellee:

          Aislinn W. Brown, Agency Legal Services Bureau Chief, Helena, Montana

          Submitted on Briefs:  March 12, 2025

          Decided:  June 3, 2025

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Cascade County (County), a political subdivision of the state of Montana, appeals from the April 8, 2024 Order of the First Judicial District Court, Lewis and Clark County, denying the County's application for an alternative writ of mandate. We reverse and remand with instructions to issue the alternative writ of mandate.

¶2 The County presents the following issue for review:

*Whether the District Court erred in denying Cascade County's application for an alternative writ of mandate.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 This appeal constitutes another chapter in a long-running dispute between the County and the Montana Petroleum Tank Release Compensation Board (Board) regarding reimbursements for costs of remediating damage caused by environmental contaminants released from petroleum storage tanks. *See Cascade Cnty. v. Mont. Petroleum Tank Release Comp. Bd.* (*Cascade I*), 2021 MT 28, ¶¶ 4-5, 403 Mont. 195, 480 P.3d 815.

¶4 The County discovered petroleum contamination under a County shop complex and notified the Department of Environmental Quality (DEQ) in October 1996. *Cascade I*, ¶ 5. A 2000 remedial investigative report concluded that the contamination came from "four, County-owned and -operated tanks." *Cascade I*, ¶ 6. After the DEQ approved a "corrective action plan to remediate contaminations" in 2006, the County requested the DEQ "designate the site as a multiple release site for purposes of eligibility for reimbursement from the Board." *Cascade I*, ¶ 6. The DEQ declined the request; the

County then sought a writ of mandamus to "compel the DEQ to assign multiple release numbers to the site." *Cascade I*, ¶ 6.

¶5 As that litigation proceeded, the County followed the remediation plan and completed the remediation in November 2008. *Cascade*, ¶ 7. However, when the County submitted receipts to the Board, the costs incurred "exceeded the statutory maximum reimbursement for a single release." *Cascade I*, ¶ 7. The Board signaled to the County that "additional requests for reimbursement would be denied." *Cascade I*, ¶ 7. The County continued to submit requests for reimbursement and asked the Board to overrule the decision to "deny further reimbursement," but the Board declined to reconsider until the mandamus action with the DEQ concluded. *Cascade I*, ¶ 7. The resolution of the County's mandamus action continued until the DEQ and the County "stipulated to its dismissal in June 2013," acknowledging that while the DEQ managed "all of the petroleum contamination at the site under a single release number[,]" the DEQ took no position on whether the single site could contain multiple "releases" under the definition provided for in § 75-11-302(24), MCA (1995).[1] *Cascade I*, ¶ 9.

¶6 Subsequently, the County filed four separate applications for eligibility for reimbursement with the Board in February 2014. *Cascade I*, ¶ 9. The County and the Board agreed that the statutory maximum had been paid for remediation on the single release number designated by the DEQ in 1999. *Cascade I*, ¶ 9. The Board then denied eligibility for the other three releases because the DEQ had classified all four

---

[1] This opinion will continue to rely on the 1995 version of this statute, consistent with *Cascade I*, ¶ 4 n.1.

3

contaminations under a single release number. *Cascade I*, ¶ 9. After the County contested the Board's denial of eligibility, the appointed Hearing Examiner agreed that the contamination at the site had four discrete releases but that either the § 27-2-231, MCA, general statute of limitations or the doctrine of laches time-barred any recovery by the County. *Cascade I*, ¶ 9. In its final decision, the Board adopted the majority of the Hearing Examiner's findings of fact and conclusion of law regarding the statute of limitations but specifically rejected the conclusion of law finding four individual releases. *Cascade I*, ¶ 9.

¶7 The County sought judicial review of the Board's decision, asking the court to address whether the County was entitled to reimbursement for three additional releases. *Cascade I*, ¶ 11. The district court concluded that the site contained four individual releases of contaminants that "could be eligible for reimbursement" and the statute of limitations would not bar the County from seeking reimbursement. *Cascade I*, ¶ 9. On appeal, we agreed that "the County has established four releases occurred at the site" and remanded to the district court with instructions to direct the Board to reimburse the County's costs for the three additional releases. *Cascade I*, ¶¶ 29-30.[2]

¶8 After the Board refused to consider the County's reimbursement claims because the County did not submit them in the manner required by Board regulations, the County filed an application for alternative writ of mandate in the District Court on January 26, 2024. After oral arguments on the matter, the District Court denied the County's application,

---

[2] On remand, the County moved the district court for attorney's fees, costs, interest, and damages based on unjust enrichment, the denial of which we affirmed on appeal. *Cascade Cnty. v. Mont. Petroleum Tank Release Comp. Bd.* (*Cascade II*), 2022 MT 202, 410 Mont. 325, 518 P.3d 1280.

concluding that the Board did not have a clear legal duty to review the claims as submitted. The County now appeals.

## STANDARD OF REVIEW

¶9     "A district court's issuance or denial of a writ of mandate is a conclusion of law that we review for correctness." *Belgrade Educ. Ass'n v. Belgrade Sch. Dist. No. 44*, 2004 MT 318, ¶ 6, 324 Mont. 50, 102 P.3d 517 (citation omitted).

## DISCUSSION

¶10     A writ of mandate is an extraordinary remedy available only in rare cases. *State ex rel. Chisholm v. Dist. Ct.*, 224 Mont. 441, 442, 731 P.2d 324, 324 (1986) (quotation omitted). Section 27-26-102(1), MCA, provides:

> A writ of mandamus may be issued by the supreme court or the district court or any judge of the district court to any lower tribunal, corporation, board, or person to compel the performance of an act that the law specifically enjoins as a duty resulting from an office, trust, or station or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled and from which the party is unlawfully precluded by the lower tribunal, corporation, board, or person.

A party applying for a writ of mandamus must satisfy two requirements: the party must demonstrate it is entitled to performance of a clear legal duty by the party against whom the writ is sought and prove an absence of a speedy and adequate remedy in the ordinary course of law. *Best v. Police Dept. of City of Billings*, 2000 MT 97, ¶ 14, 299 Mont. 247, 999 P.2d 334 (citing § 27-26-102, MCA). If a party seeking the writ meets these requirements, "the writ *must* be issued." Section 27-26-102(2), MCA (emphasis added).

¶11     As a threshold matter, we must first determine whether § 75-11-309, MCA, imposes on the Board a clear legal duty to the County. *Boehm v. Park Cnty.*, 2018 MT 165, ¶ 9,

5

392 Mont. 72, 421 P.3d 789 (quoting *Best*, ¶ 14). A clear legal duty must involve a ministerial act, defined by law with "such precision and certainty as to leave nothing to the exercise of discretion and judgment." *Beasley v. Flathead Cnty. Bd. of Adjustments*, 2009 MT 120, ¶¶ 16-17, 350 Mont. 171, 205 P.3d 812 (citation omitted). However, "'even where discretion is involved, if there has been such an abuse as to amount to no exercise of discretion at all, mandamus will lie to compel the proper exercise of the powers granted.'" *Paradise Rainbows v. Fish & Game Comm'n*, 148 Mont. 412, 417, 421 P.2d 717, 720 (1966) (quoting *Skaggs Drug Centers v. Mont. Liquor Control Bd.*, 146 Mont. 115, 124, 404 P.2d 511, 516 (1965)).

¶12 Pursuant to the procedures for reimbursement of eligible costs, the Board "shall review each claim received [. . .], make the determination required by this subsection, inform the owner or operator of its determination, and, as appropriate, reimburse the owner or operator from the [Petroleum Tank Release Cleanup] fund." Section 75-11-309(2), MCA. Further, an owner or operator seeking reimbursement for eligible costs "shall document in the manner required by the [B]oard all expenses incurred in preparing and implementing the corrective action plan." Section 75-11-309(1)(f), MCA.

¶13 The Board claims the County's requests for reimbursement fail to distinguish between the three additional releases. This defect in the requests for reimbursement, according to the Board, prevents proper examination of the County's claims because the Board cannot attribute the contamination to the three discrete releases. Section 75-11-309(1)(f), MCA (requiring the County to document expenses related to remediation "in the manner required" by the Board). On appeal, the Board asserts that the "manner

required" referred to by § 75-11-309(1)(f), MCA, mandates that a reimbursement claim must be "associated with a release that has been assigned a unique identification number" by the DEQ. Admin. R. M. 17.58.325(2) (2021). Because the DEQ has only assigned one unique identification number, the Board will not review reimbursement claims for the additional releases. The District Court agreed, concluding that the Board has the discretion to establish the form in which a party seeking reimbursement submits those claims and, without the County's compliance with "the manner required," the Board had no clear legal duty to review the County's claims.

¶14    Section 75-11-309(2), MCA, clearly delineates the criteria the Board must "affirmatively determine" prior to approving a reimbursement:

> (2) The **board shall review each claim received under subsections (1)(f) and (1)(g)**, make the determination required by this subsection, inform the owner or operator of its determination, and, as appropriate, reimburse the owner or operator from the fund. Before approving a reimbursement, **the board shall affirmatively determine** that:
> (a) the expenses for which reimbursement is claimed:
>     (i)   are eligible costs; and
>     (ii) were actually, necessarily, and reasonably incurred for the preparation or implementation of a corrective action plan approved by the department or for payments to a third party for bodily injury or property damage; and
> (b) the owner or operator:
>     (i)   is eligible for reimbursement under 75-11-308; and
>     (ii) has complied with this section and any rules adopted pursuant to this section.

(Emphasis added.) Thus, the County seeks to enforce the Board's legal duty as set forth in § 75-11-309(2), MCA, to "affirmatively determine" whether the expenses "are eligible costs" for reimbursement and whether the expenses "were actually, necessarily, and reasonably incurred for the preparation or implementation of a corrective action plan

7

approved by the department or for payment from a third party for bodily injury or property damage[.]" Section 75-11-309(2)(a), MCA. The duty to review and act on every claim is clear.

¶15 Here, the County completed the remediation of contamination in November 2008 pursuant to the DEQ's corrective action plan and submitted "receipts for the remediation costs to the Board[.]" *Cascade I*, ¶ 7. The Board grounds its refusal to review the claims on the County's alleged noncompliance with the "manner required" language of subsection (1)(f) and the Board's adoption of Admin. R. M. 17.58.325(2) (2021). Should the County's claims not conform to the "manner required" under § 75-11-309(1)(f), MCA, and Admin. R. M. 17.58.325(2) (2021), thus potentially warranting a denial of the claims, this would not prevent review altogether given the Board's clear legal duty to "review each claim" and affirmatively determine whether the claim "compl[ies] with this section and any rules adopted pursuant to this section." Moreover, the County "filed four separate applications for eligibility with the Board" in February 2014. *Cascade I*, ¶ 8. "Based upon the stipulated facts and the definition of 'release' under § 75-11-302(24), MCA, the four releases, for which the County seeks reimbursement, occurred at the site as a matter of law." *Cascade I*, ¶ 28. Because the Board did not adopt Admin. R. M. 17.58.325(2) (2021) until after the County had submitted its four applications for reimbursement and after our decision in *Cascade I*, the requirement that only applications for reimbursement "of costs associated with a release that has been assigned a unique identification number" by DEQ cannot be retroactively applied to the claims submitted in 2014. Section 2-4-306(4), MCA ("Each rule shall become effective after publication in the register[.]"). Our decision here does

not prevent the Board from exercising its discretion to reject the County's claims for insufficient statutory compliance and providing its reasons for doing so under § 75-11-309(2), MCA. Withholding a determination on the submitted claims due to purported nonconformity amounts to "no exercise of discretion at all." *Paradise Rainbows*, 148 Mont. at 417, 421 P.2d at 720. Accordingly, the District Court incorrectly determined that the Board did not have a clear legal duty to the County to review the reimbursement under § 75-11-309(1)(f), MCA.

¶16 Having concluded the Board has a clear legal duty to the County, we turn now to whether the County has no other available speedy or adequate remedy in the ordinary course of law. Section 27-26-102(2), MCA. The Board succinctly asserts the County could simply "comply with the law" and submit conforming reimbursement claims instead of seeking a writ of mandate. We disagree that resubmitting the claims presents an alternative remedy available to the County, as we have already determined that whether the reimbursement claims comply with the Board's submission requirements does not bar a decision by the Board on those claims. Further, the County maintains that it is unable to allocate the expenses in the pending claims to a single release because the County undertook a comprehensive cleanup of the entire site, pursuant to the terms of the DEQ's corrective action plan covering all four releases. The County did not track the expenses in such a manner that it would allow allocation of the expenses between the four releases. The County did not have a statutory requirement under the reimbursement statute to separate out and submit costs per release.

9

¶17 We granted a writ of mandamus where an administrative agency refused to perform its clear legal duty to initiate rulemaking, thereby preventing the aggrieved party's opportunity to seek judicial review of the agency's action under the Montana Administrative Procedures Act (MAPA). *Common Cause v. Argenbright*, 276 Mont. 382, 392, 917 P.2d 425, 431 (1996). Without compelling such action, the petitioner there would have had "no plain, speedy and adequate remedy in the ordinary course of law." *Common Cause*, 276 Mont. at 392, 917 P.2d at 431. This Court's reasoning in *Common Cause* applies equally here.

¶18 The statutory procedures for cleanup of petroleum storage tank releases provide that "[i]f an owner or operator disagrees with a [B]oard determination[,]" the owner or operator may "submit a written request for a hearing before the [B]oard." Section 75-11-309(3), MCA. Following a contested hearing and the exhaustion "of all administrative remedies available within the agency," a party aggrieved by a final agency decision "is entitled to judicial review" under MAPA. Section 75-11-309(3), MCA; *see* § 2-4-702(1)(a), MCA. As in *Common Cause*, the County has no remedy until the Board "review[s]" the reimbursement claims submitted by the county and makes its "determination[.]" Section 75-11-309(2), MCA. The Board has simply taken no action on the submitted claims. Until the Board renders its decision on the claims already submitted by the County for the remediation work completed in 2008, the County has no remedy available by law.

¶19 We conclude the Board has a clear legal duty to determine the reimbursement eligibility of the claims submitted by the County. Without a determination, the County has no available remedy under the law. Accordingly, we hold that mandamus lies to compel

10

the Board to review and determine eligibility of the claims submitted by the County for reimbursement of costs resulting from remediating the contamination.

## CONCLUSION

¶20    The District Court erred in determining the Board owed no clear legal duty to the County.  The Order denying the County's writ of mandamus is reversed and the case is remanded with instructions to issue the alternative writ of mandate.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M BIDEGARAY
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE

Justice Jim Rice, concurring.

¶21    I agree with the Court's Opinion as far as it goes, but I do not believe it gets to the bottom of the issue before us.

¶22    Setting aside for a moment that the Board has authority and discretion to determine *the manner* in which a claim must be submitted, the deeper dispute here is a legal question—what the law otherwise requires for a claim to be properly submitted to the Board for review.  Specifically, the Board argues that the law requires claims to be submitted singularly and separately, which inherently, and by rule, further requires that all cleanup costs for which reimbursement is sought must be allocated to an individual claim

11

or claims. To be clear, the Board acknowledges that a cleanup expense could relate to more than one claim, but it must nonetheless be apportioned to individual claims. *See* Admin. R. M. 17.58.334 (2011) *Claim for Reimbursement* (referencing expense invoices that are "to be divided among multiple releases"). On the other side, the County argues the law does *not* require allocation of expenses to individual claims. As the County states in its briefing, "there is *no legal requirement* that a claimant allocate each expense to a particular release." (Emphasis added.) Thus, the County's position is that, despite the Board having discretion to determine the manner in which claims can be submitted, the Board cannot require *allocation* of cleanup expenses among individual claims because the law does not require it.

¶23 Instead, what the County wants to do is submit the total of its cleanup expenses in a lump sum to the Board and force the Board to render a decision on whether the expenses were "actually, necessarily, and reasonably incurred" for the cleanup plan. Section 75-11-309(2)(a)(ii), MCA; *see* Appellant's Opening Brief ("the Board must determine whether a claimed expense was 'actually, necessarily, and reasonably incurred for the preparation or implementation of [a DEQ approved] corrective action plan'—*even if the expense arises out of or is related to more than one release*" (emphasis added)). Then, assuming the total expenses, or some portion thereof, are determined to be properly incurred, the County—again, contending that the law does not require allocation—wants to simply multiply the statutory claim cap of $982,500 by its four claims to determine its maximum payout, without ever having demonstrated the amount of expenses incurred for each individual release—in other words, an unallocated total amount. While this approach

12

may correctly calculate the County's maximum possible payout for multiple claims, and while we need not finally resolve this issue in the context of a mandamus proceeding, a potential problem is that it would prevent the Board from knowing whether it was unlawfully paying out more than the statutory cap for any one individual claim.

¶24 While I agree with the County and the Court that a writ of mandate is available to move this process forward, I disagree with the breadth of the relief the County is seeking. First, § 75-11-309, MCA, states no less than five times that claim documents must be submitted "in the manner required by the Board." As the District Court noted, "[t]he Board has discretion in determining what that form is and whether Cascade County has met the requirements." *See* § 75-11-318, MCA (The Board "shall adopt . . . rules governing submission of claims by owners or operators to the department and board."). Admin. R. M. 17.58.334 (2011), states that a claim "must include all the information required by the board's claim form." In turn, the Board's claim form and its instructions explain, in bold lettering, that "[a] separate claim form is required for each release." The County has so far refused to satisfy this requirement.

¶25 Section 75-11-309(2), MCA, provides that the Board "shall review each claim received" and "make the determination required by this subsection," inform the owner or operator of its determination, and, if appropriate, approve reimbursement. While I believe the Court is correct in holding that the Board itself must act, and cannot simply decline to review claims through staff, the Board would be entirely within its legal authority and discretionary prerogative to reject a claim for failing to satisfy initial submission requirements. As the Court notes, should the County's claims not conform to the "manner

13

required" under § 75-11-309(1)(f), MCA, and Admin. R. M. 17.58.325(2) (2021), that could potentially warrant a denial of the claims. Opinion, ¶ 15. I agree, and believe such a determination would fulfil the Board's initial statutory obligation "to make a determination required by this subsection" on the claims. Section 75-11-309(2), MCA. I would clarify that the County has *not* demonstrated that a writ of mandate is warranted to require the Board to decide whether all of the County's total submitted expenses qualify as "actually, necessarily, and reasonably incurred." It is possible the Board may go that far, but only after it initially determined the claims had been properly submitted, and, therefore, this is not currently a clear legal duty. If the claims are denied on the basis of "manner of submission" errors, including the need for allocation, the County could contest the Board's determination on these issue by the appeal process.[1]

¶26    I concur.


/S/ JIM RICE


Chief Justice Cory J. Swanson joins in the concurring Opinion of Justice Jim Rice.


/S/ CORY J. SWANSON

---

[1] In addition, the Board argues that the release site investigation revealed contamination from a former petroleum refinery that would not be eligible for reimbursement, and that, without information tying the contaminated soil to a specific source, "the Board could not determine what contamination came from which release, or even if the contamination was eligible for reimbursement." The District Court noted that, at oral argument, the Board represented that its staff "is willing to work with Cascade County to help it submit claims which meet the Board's allocation requirements."

14